A95A1453. POWELL v. ESTATE OF WILLIAM D. AUSTIN et al.
(462 SE2d 378)

BLACKBURN, Judge.

F. Carl Powell III, d/b/a Corky Bell's Seafood (Powell), appeals from the judgment entered against him in favor of the appellees, the

---

Estate of William D. Austin, Maurice Steinberg, and Birnet Johnson (collectively referred to as the lessors), in the underlying action for a distress warrant and from the trial court's denial of his motion for j.n.o.v. or in the alternative, motion for new trial. Specifically, Powell maintains that there was no evidence adduced at trial that a landlord-tenant relationship existed between him and the lessors. He further maintains that the trial court erred in admitting evidence concerning the condition of the vacated premises and also erred in giving or failing to give certain jury charges. Because we find the jury could properly consider Powell to have a landlord-tenant relationship with the lessors and because we find that the trial court committed none of the enumerated errors in admitting evidence or instructing the jury, we affirm.

The evidence viewed in the light most favorable to the jury's verdict and the judgment shows that Charles Edward Bell and Benny Carnell Smith were the only shareholders of Bell & Smith Enterprises, Inc. (Smith Company), a corporation that operated eating establishments known as Corky Bell's Seafood restaurants. On June 8, 1985, Bell, Smith, and the Smith Company executed an agreement with lessors to lease certain property located in Augusta that was suitable for operating a restaurant. The lease term commenced in the summer of 1985 and lasted for five years. Under the terms of the lease, the lessees had the right to renew and extend the term of the lease for two additional five-year periods, beginning on July 1, 1990, by providing the lessors with written notice of their intention prior to the expiration of the existing lease.

In January 1988, the lessees shifted the ownership of the restaurant and the Smith Company amongst themselves. By way of agreement, Smith became the sole shareholder of the Smith Company and Bell became the owner of Corky Bell's Seafood restaurant in Augusta, the property subject to the instant lease. Bell later formed a new corporation, Bell & Son Enterprise, Inc. (Son Company), to operate the restaurant. The lessors were unaware of these transfers.

After these transfers, on March 1, 1990, Bell, in his purported capacity as president of the Smith Company, provided written notice to the lessors of the Smith Company's intent to renew the lease. His renewal notice makes no mention of Smith. On the basis of this notice, the lessors renewed the lease for a five-year period.

During the term of the original lease, yet after Smith and Bell's ownership transferred, a portion of the leasehold's parking lot was condemned by Richmond County for road construction. Smith, Bell, and the Smith Company intervened in the condemnation, claiming to be interested parties by virtue of their lease.

In August 1990, Powell purchased all the stock of the Son Company and began operating the restaurant. Although Powell never

signed a lease, he informed the lessors that he had "assumed" the lease. In response, the lessors informed Powell that he would be considered the tenant and thus would be individually liable on the lease. Evidence construed in a light most favorable to the verdict indicates that Powell personally made rent payments to the lessors. Further, Powell was aware of the five-year renewal term extending the lease until June 1995, and ultimately, Powell received the condemnation proceeds attributed to the leasehold interest and directed them to his company. Claim was made to those proceeds based upon the lease continuing through June 1995, the end of the renewed term.

In the summer of 1992 Powell vacated the premises, and this action ensued.

1. "The relationship of landlord and tenant, either by express or implied contract, must exist to support an action on a distress warrant." *Arnold v. Selman*, 83 Ga. App. 150, 151 (62 SE2d 919) (1951). Consequently, we first determine whether the relationship of landlord and tenant existed between Powell and the lessors by virtue of an express contract. The lessors contend that such an agreement exists because the original tenants properly renewed the lease and Powell steps into their shoes as an assignee or subtenant; whereas, Powell claims that the renewal was inoperative and did not extend the term of the lease after June 30, 1990. We agree with Powell that the lease was not properly renewed.

To comply with the Statute of Frauds, a lease lasting longer than one year must be in writing, and it is just as important that the authority of the agent executing that lease be in writing. *Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490, 492 (296 SE2d 749) (1982). As the record contains no proper written evidence that Bell was "lawfully authorized" to act on behalf of Smith or the Smith Company at the time he negotiated the renewal, the written renewal submitted by Bell is considered void. See *Brookhill Mgmt. Corp. v. Shah*, 197 Ga. App. 305 (398 SE2d 290) (1990) (lease renewal signed by agent was inoperative as there was no written documentation of the agent's authority to execute the renewal).

Having determined Powell was not an assignee or subtenant pursuant to a valid express contract, we focus on whether Powell had some implied contract with the landlord so as to support an action for a distress warrant. As outlined above, the Statute of Frauds requires that leases for a period in excess of a year must be in writing. OCGA § 13-5-30 (4). Thus, the question becomes whether Powell's parol agreement with the landlord falls within an exception to the Statute of Frauds.

"A parol contract sought to be enforced as within some exception to the Statute of Frauds . . . must be certain and definite in all essential particulars, and if part performance is relied upon to make it en-

forceable, the part performance must be part performance of an essential element of the contract sought to be proved, and of a character which would render it a fraud on the plaintiff if the defendant refused to comply." (Citation and punctuation omitted.) *Norris v. Downtown LaGrange Dev. Auth.*, 151 Ga. App. 343, 344 (259 SE2d 729) (1979). We determine that the present matter falls within the exception. It is undisputed that Powell accepted condemnation proceeds awarded to the leasehold interest. The claim to these proceeds was based on the five-year term of the lease. Further, Powell orally stated to the landlord that he had purchased the restaurant and had assumed the lease for the remainder of its five-year renewal term, and the evidence, construed in the light most favorable to the verdict, indicated that Powell understood he was to be individually liable for the rent.

Powell disputes that his performance was sufficient to remove the contract from the Statute of Frauds. We disagree. Key elements to the jury's verdict, including the party to be held liable, the monthly rental, and the duration of the lease, were all evidenced by Powell's performance. Moreover, we have previously held that the Statute of Frauds provides no defense to a promising party when the other party has acted on the promise to its detriment. *Scott v. Lumpkin*, 153 Ga. App. 17, 20 (264 SE2d 514) (1980). Here, the lessors acted to their detriment as they shared proceeds received from the condemnation based upon the claim that Powell's leasehold interest extended through June 1995. On the facts of this case, we find it would be better to endure the uncertainties of parol evidence than to permit Powell to take unjust advantage of the lessors. In light of the foregoing, we find an implied contract between Powell and the landlord sufficient to support this action on a distress warrant and the subsequent judgment entered thereon.

2. Powell also enumerates as error the trial court's failure to instruct the jury with a requested charge as to the types of evidence that demonstrate the existence of a corporation, e.g., articles of incorporation, minutes from corporate meetings, stock certificates. In his defense, Powell asserted that the debt in question was corporate, not individual. The court correctly declined to instruct the jury, as the charge impermissibly commented on evidence that had been proffered by Powell and could have swayed the jury to give that evidence undue consideration. *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 448 (451 SE2d 87) (1994). Even if this charge had not commented on the evidence, Powell cannot demonstrate that he was harmed. The court thoroughly and adequately charged the jury on the pertinent precepts of corporate law. *Monroe v. Southern R. Co.*, 210 Ga. App. 597, 599 (436 SE2d 568) (1993) (failure to give a correct and pertinent instruction is not error if its principles are sufficiently covered in the

charge as a whole).

3. Powell enumerates as error the trial court's admission of testimony and photographs regarding physical damages to the leasehold at the time it was vacated. Powell also enumerates as error the trial court's charging the jury on the general precept that: "Damages resulting from a breach of contract are such as arise naturally and according to the usual course of things." In support of this enumeration, Powell cites *D. Jack Davis Corp. v. Karp*, 175 Ga. App. 482 (333 SE2d 685) (1985) for the proposition that a distress warrant may be used to recover only rent, not any other losses incurred by the landlord in relation to the lease. Consequently, Powell argues that it was error for the court to admit this evidence and make this charge. We disagree with Powell's reading of *D. Jack Davis Corp.* The statute governing distress warrants carefully balances the due process rights of tenants with the landlord's need for exigent relief when rent is not being paid. This balance is achieved though abbreviated answer periods and expedited hearings. See OCGA §§ 44-7-72; 44-7-74. Thus, a tenant in a distraint proceeding loses some of the civil procedure rights it would enjoy as a defendant in other litigation contexts. This background explains the reasoning employed in *D. Jack Davis Corp.* Under the facts of that case, the tenant had a valid right to be in possession of the property at the time the distress warrant was sought. Shortly thereafter, the tenant moved out of the property in response to the landlord's demand for possession. No rent was owing for the period that the tenant occupied the property. Subsequently, on three separate occasions, the landlord amended his application for a distress warrant, changing the type and increasing the amount of damages sought. In particular, the landlord amended his application to seek damages sustained to the leased property and rental lost because the poor condition of the property prevented him from releasing immediately. This court held that "[t]he attempts of the landlord to jerry the distraint proceeding by amendment into a general complaint for damages" was not authorized by law. *D. Jack Davis Corp.* stands for the proposition that one cannot transform an application for a distress warrant that was wholly without basis into a general complaint for damages other than rent simply by amending the application. To do so would permit a landlord to take improper advantage of the procedural benefits accorded him in a distraint proceeding. *D. Jack Davis Corp.* does not stand for the proposition that damages other than rent can never be obtained in a distress proceeding. Clearly, if there is a valid underlying dispute about rent, other matters concerning the lease may also be addressed in the same proceeding. This interpretation of *D. Jack Davis Corp.* is supported by the statute governing distress warrants which provides: "If, on the trial of the case, the judgment is against the tenant, the judgment shall be

entered against the tenant for all rent due *and for any other claim relating to the dispute.*" (Emphasis supplied.) OCGA § 44-7-77 (a). Clearly, the legislature intended that a distress proceeding may be used to recover damages in addition to rent if they are somehow related to the lease. Consequently, the trial court did not err in admitting the evidence or charging the jury as claimed by Powell.

We affirm the verdict of the jury and the subsequent judgment entered by the trial court.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED AUGUST 2, 1995 —
RECONSIDERATION DENIED SEPTEMBER 6, 1995 — 

*Baumer, Bradford & Walters, Julie L. G. Sears, Sam G. Nicholson, Andrew M. Magruder*, for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, Thomas R. Burnside, Jr., Harry D. Revell*, for appellees.