## A96A0343. HARPER et al. v. DOOLEY et al.

(472 SE2d 461)

JOHNSON, Judge.

Clay Brunson was killed when the pickup truck he was driving struck logs extending from the back of a log truck. The log truck was parked in the turn lane of a public highway, at night, waiting for a paper mill to open early the next morning. After parking at the end of a line of other log trucks already waiting for the plant to open, Larry Mathis took down the red "pole light" hanging from the end of his logs, and went to sleep in the truck's cab until he was awakened by the collision. Mathis had not activated any other warning markers or lights, though he was required to do so by Georgia Public Service Commission regulations. Brunson's parents, Bernell Harper and P. B. Brunson, Jr., sued Mathis and the truck's owner, J. W. Dooley, for wrongful death. A jury returned a defense verdict, from which Brunson's parents appeal. We reverse.

1. Brunson's parents first enumerate as error the trial court's admission into evidence results of tests performed by the Georgia Bureau of Investigation Division of Forensic Sciences ("the crime lab") on blood and urine samples allegedly drawn from Brunson's body. Based on these test results, crime lab experts opined that Brunson had been under the influence of marijuana and alcohol at the time of the collision. Harper contends that the evidence of the samples' chain of custody was insufficient.

Floyd County medical examiner Dr. Steve Covington remembered taking blood and urine samples from Brunson's body on November 18, 1992, though his written report and examination notes make no mention of it. Dr. Covington had no memory or record of what he had done with the samples. He customarily gave bodily fluid samples either to the police officer investigating the case, to his physician's assistant for transfer to the police department, or to his hospital lab; he was certain he had not done any of these things with the Brunson samples.

On January 15, 1993, a crime lab employee found in the crime lab drop box blood and urine samples labeled "Clay Brunson," in containers matching those customarily used by Dr. Covington. The crime lab employee designated these samples, respectively, Items 2A and 2B. Accompanying them was another blood sample, which he designated Item 1. There was also paperwork indicating that Item 1 had been placed in the box by the Floyd County Police Department. Item 1, drawn from Brunson's body by assistant coroner Craig Burns, was never tested by the crime lab. Tests on Items 2A and 2B were the basis for the trial testimony.

No witness had a record or memory of the Floyd County Police Department ever being in possession of any samples other than Item

1. Nor could any witness or record specifically account for what Dr. Covington had done with his samples; for how the samples propounded at trial as Dr. Covington's came to appear in the crime lab drop box with Item 1; or for where they were from November 18 to January 15. There was testimony that Dr. Covington worked with the coroner; that the coroner's office sometimes placed samples in the police evidence refrigerator; and that the transporting police officer sometimes took samples for which there was no paperwork from the evidence refrigerator to the crime lab.

A party proffering evidence based on testing of a sample of fungible materials must establish a chain of custody adequate to preserve the sample's identity. Absolute certainty is not required; rather, the circumstances must establish a "reasonable assurance" that the tested sample is the correct one. *Staples v. State*, 209 Ga. App. 802, 805 (5) (434 SE2d 757) (1993). A reasonable assurance may be provided by testimony of compliance with "established procedures." *Sims v. State*, 213 Ga. App. 151, 152 (1) (444 SE2d 121) (1994). In the case now before us, however, Dr. Covington has admitted that he did not follow his established procedures; and Mathis seeks to fill the resulting gap with an established lack of procedures on the part of the Floyd County Police Department, which made a practice of storing and transporting evidence of which it kept no records. Although the totality of the circumstances suggests a possibility that the samples might have been from Brunson's body, that is not enough. See *Unigard Ins. Co. v. Elmore*, 137 Ga. App. 665, 666 (2) (224 SE2d 762) (1976). Mathis did not establish a reasonable assurance of the tested samples' identity. Admission of the test results was thus error.

In order to obtain a reversal, an appellant must show not just error, but harm. See *Stringer v. Harkleroad & Hermance*, 218 Ga. App. 701, 704 (1) (463 SE2d 152) (1995). When evidence is erroneously admitted, it is considered harmful unless it can be said that it did not affect the verdict. See *Liu's Enterprises v. Li*, 204 Ga. App. 397, 398 (1) (419 SE2d 511) (1992). Because the test results were the strongest evidence Brunson was intoxicated, the error almost certainly affected the verdict, and thus requires reversal.

2. Brunson's parents also challenge the trial court's refusal to charge the jury that it should hold Brunson to the same standard of care for his own safety to which it would hold a sober person. Brunson's parents allege that this was a proper charge under *Ridgeway v. Whisman*, 210 Ga. App. 169, 170 (435 SE2d 624) (1993) and *Shuman v. Mashburn*, 137 Ga. App. 231, 233-234 (2) (223 SE2d 268) (1976). Brunson's parents also allege that the failure to give the requested charge left Mathis free to argue that Brunson was legally required to exercise a higher standard of care than "ordinary care" because Brunson knew he was intoxicated. We have no transcript of the clos-

ing argument, and so are precluded from finding error in the closing itself. See *West v. State*, 120 Ga. App. 390, 392 (3) (170 SE2d 698) (1969).

In order for refusal of a charge request to be error, the request must be "entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citations and punctuation omitted.) *Kammin v. O'Neal*, 206 Ga. App. 855, 856 (1) (426 SE2d 633) (1992), rev'd on other grounds, 263 Ga. 218 (430 SE2d 586) (1993). It is not necessary that the general charge use the exact language proposed by the appellant, if the points of law are sufficiently covered. *Moore v. State*, 176 Ga. App. 490, 491 (3) (336 SE2d 365) (1985). In the case now before us, there was no error because the trial court instructed the jury that Brunson was required to exercise "ordinary care or due care" for his own safety, and defined ordinary care as "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." The general charge thus adequately covered the applicable standard of care.

3. Brunson's parents contend the trial court erred in charging the jury that Brunson was required to have "regard for . . . actual and potential hazards," and to drive "at a reasonable and prudent speed when special hazards exist with respect to other traffic." Brunson's parents contend this charge, a paraphrase of OCGA § 40-6-180, conflicts with *Rogers v. Johnson*, 94 Ga. App. 666, 678 (5) (96 SE2d 285) (1956), which holds that a driver is not required to anticipate the presence of objects illegally or negligently placed in the road.

The challenged portion of the charge is a correct statement of the law; and in view of the trial court's charge on ordinary care (discussed in Division 2 above), we cannot say the charge as a whole was error. See *Powell v. Estate of Austin*, 218 Ga. App. 446, 449-450 (2) (462 SE2d 378) (1995). While the *Rogers v. Johnson* principle is also a correct statement of law applicable to this case, Brunson's parents did not request the court to charge it, and do not now allege that omitting to charge it was error. Nor do we find that its omission was such a substantial error that it was harmful as a matter of law, which would require reversal even in the absence of objection. See OCGA § 5-5-24 (c). We therefore find no ground for reversal in connection with the challenged portion of the charge. If upon retrial Brunson's parents request that the *Rogers v. Johnson* principle be charged, however, the trial court would be authorized to grant the request.

4. Brunson's parents' remaining enumerations of error challenge the trial court's refusal to charge the jury that Mathis was negligent per se because he admittedly did not comply with various federal regulations requiring parked trucks engaging in interstate commerce to

use certain warning markers and lights. We have no transcript of the charge conference. The trial court apparently found the regulations inapplicable because Mathis' truck was used only in Georgia.

Since the trial, Brunson's parents' counsel has discovered that Georgia Public Service Commission regulations governing intrastate trucking incorporate the federal standards. We presume that upon retrial Brunson's parents will thus request a negligence per se instruction based on violations of the PSC regulations. The question of whether the federal regulations themselves applied to Mathis' truck is therefore moot.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MAY 29, 1996 —
RECONSIDERATION DENIED JUNE 17, 1996 — 

*John W. Moulton*, for appellants.
*Forrester & Brim, Weymon H. Forrester, Richard C. Bellows*, for appellees.