A00A0378. SWAN KANG, INC. v. TAE SANG KANG (YI).
(534 SE2d 145)

RUFFIN, Judge.

Swan Kang, Inc. sued Tae Sang Kang (Yi) for breach of a contract to purchase a liquor store. Swan Kang claimed that Yi owed it $20,000 in liquidated damages under the contract, as well as attor-

---

ney fees under OCGA § 13-6-11. The trial court granted summary judgment to Yi on the ground that the liquidated damages provision in the contract was an unenforceable penalty. We disagree and reverse.

To prevail on summary judgment, a defendant must show that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the plaintiff, warrant judgment as a matter of law.[1] We review a grant of summary judgment de novo.[2]

Swan Kang owned and operated a liquor store in Lilburn. Acting through a broker, Yi offered to purchase the store for $1.07 million. The offer was in the form of a proposed contract and was signed by Yi and the broker, with a blank for the seller's signature. The contract provided that Yi would pay the broker $20,000 in earnest money, which would be applied toward the purchase price at the closing. The contract also provided that if "this contract is not consummated by reason of Buyer's refusal or inability to perform, then such earnest money shall be paid to Seller as liquidated damages for Buyer's breach."

The broker delivered the offer to Thomas Kang, an officer of Swan Kang. Kang made several handwritten changes to the contract which Swan Kang admits were material, and then Kang signed it.[3] The broker then returned the modified contract to Yi. According to the broker, Yi reviewed the changes, said that they were acceptable, and then gave the broker a $20,000 check for the earnest money. Yi, however, testified that she never approved Kang's changes and, in fact, was not even aware of them until this litigation ensued.

The broker deposited Yi's check into an escrow account. A day or two later, the bank notified the broker that the check had been returned for insufficient funds. The broker contacted Yi, but she never corrected the problem. Shortly thereafter, Yi told the broker that she wanted to cancel her offer because she had just discovered that there was another liquor store nearby. Yi then sent Kang a letter titled "Notice of Cancellation of Offer" explaining that she was canceling her offer because she had not been told about the other store, and she did not want to compete with it.

Swan King sued Yi for $20,000, plus attorney fees. Yi sought summary judgment on four grounds: (1) there was no meeting of the minds and thus no contract; (2) the earnest money provision was an unenforceable penalty; (3) the contract failed to describe the real

---

[1] OCGA § 9-11-56; *AAA Truck Sales v. Mershon Tractor Co.*, 239 Ga. App. 469 (521 SE2d 403) (1999).

[2] *Murray v. Fitzgerald Convenient Centers*, 239 Ga. App. 799 (521 SE2d 915) (1999).

[3] Kang made no changes to the earnest money provisions.

property to be conveyed; and (4) Yi properly exercised her right to cancel the contract. The trial court ruled that the earnest money provision was not a valid liquidated damages provision, but an unenforceable penalty, and granted summary judgment to Yi. The court did not address the other grounds raised in Yi's motion for summary judgment.

1. Swan Kang contends that the trial court erred by concluding that the liquidated damages provision was an unenforceable penalty. We agree.

Georgia law allows parties to provide for liquidated damages in their contract.[4] Such provisions are enforceable if (1) the injury caused by a breach of the contract is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the stipulated sum is a reasonable estimate of the probable loss.[5] The party who defaults under the contract bears the burden of proving that the liquidated damages clause is an unenforceable penalty.[6] The enforceability of such a clause is a question of law for the court.[7] Applying these principles here, we find that Yi has failed to show that the liquidated damages·clause at issue is an unenforceable penalty.

First, Yi presented no evidence that the damages resulting from a breach of the contract could be calculated easily and accurately.[8] In *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*,[9] the Supreme Court addressed the enforceability of a liquidated damages provision in a real estate sales contract that was worded almost identically to the one in this case.[10] The Court noted that:

> the ordinary measure of damages in this type of case is the difference between the contract price and the market value of the property at the time of the buyer's breach. Market value at the time of the breach would be subject to the vary-

---

[4] OCGA § 13-6-7.

[5] *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

[6] *Joyce's Submarine Sandwiches v. Cal. Pub. Employees' Retirement System*, 195 Ga. App. 748, 749-750 (2) (395 SE2d 257) (1990).

[7] *Jamsky v. HPSC, Inc.*, 238 Ga. App. 447, 449 (519 SE2d 246) (1999).

[8] See *Joyce's Submarine Sandwiches*, supra at 751 (defaulting party failed to carry burden of showing that liquidated damages provision was a penalty where it "presented no evidence on whether the injury caused was difficult or impossible to estimate accurately").

[9] 258 Ga. 808 (375 SE2d 222) (1989).

[10] The provision in *Liberty Life* stated as follows: "In the event buyer elects not to close this contract on or before the specified closing date, then in such event the earnest money will be forfeited as full liquidated damages to seller." Id.

ing opinions of experts, who would have to reconstruct a past market when making their evaluation.[11]

In light of this difficulty, the Court concluded that the first requirement for an enforceable liquidated damages clause was satisfied. The same reasoning applies here.

As for the second requirement, we ascertain the intent of the parties by first looking to the language of the contract. Although the words used by the parties are not conclusive, they are a significant factor in determining the parties' intent.[12] In *Liberty Life*, the Supreme Court held that there was "no question the parties intended to provide for liquidated damages" in part because "the damages clause was denominated as liquidated by the parties."[13] Here, the contract specifically states that the seller may retain the earnest money as *liquidated damages* in the event of the buyer's breach, indicating that the parties intended to provide for liquidated damages and not for a penalty. Moreover, as this language first appeared in an offer drafted by Yi, it is construed against her.

Finally, the stipulated sum appears to be a reasonable estimate of probable loss. In *Liberty Life*, the Supreme Court found that a $37,000 earnest money payment which represented ten percent of the purchase price was reasonable. Here, the $20,000 earnest money payment represents approximately two percent of the purchase price. In the absence of any evidence to the contrary, we find that this figure is reasonable.

As Yi failed to carry her burden of proving that the liquidated damages provision was an unenforceable penalty, the trial court erred in granting summary judgment in her favor on that ground. However, we affirm a grant of summary judgment if it is right for any reason.[14] Thus, we must consider the other grounds that were raised in Yi's motion but not addressed by the trial court.

2. Yi asserted that there was no contract because the parties never reached a meeting of the minds. According to Yi, Kang's material changes to her offer to purchase the business constituted a counteroffer, not an acceptance. This is correct, because "[a] subsequent communication by one party to the alleged contract that varies even one term of the original contract is a counteroffer; a counteroffer rejects an offer and terminates the offeree's power of acceptance."[15] Yi argued that she did not accept the counteroffer or even learn of its

---

[11] Id. at 809.

[12] *Daniels v. Johnson*, 191 Ga. App. 70, 72 (1) (381 SE2d 87) (1989).

[13] *Liberty Life*, supra at 809.

[14] *Bell v. Sasser*, 238 Ga. App. 843, 844 (520 SE2d 287) (1999).

[15] *Gill v. B & R Intl.*, 234 Ga. App. 528, 531 (1) (b) (507 SE2d 477) (1998).

existence until the litigation began. The broker, however, averred that he showed Kang's changes to Yi and that she agreed to them and then gave him a check for the earnest money deposit. Accordingly, there is a factual dispute as to whether Yi accepted Swan Kang's counteroffer and thereby created a contract between the parties, which precludes summary judgment on this ground.[16]

3. Yi argued that the contract was not enforceable because it contained a legally insufficient description of the property to be conveyed. Again, we disagree.

To satisfy the statute of frauds, a contract for the sale of property must contain a clear and definite description of the property.[17] A perfect description is not required, but the contract:

> must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable.[18]

A description will fail if it "is so indefinite that no particular tract of land is pointed out," but even a vague description will suffice "if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established."[19] The legal sufficiency of a description is a question of law for the court.[20]

The contract in this case described the property to be conveyed as "that certain business known as Depot Package Store, located at 4280 Lawrenceville Hwy, N.W.[,] Lilburn, the County of Gwinnett, State of Georgia 30247." The contract neither contained nor referenced any tax plat, deed, or other detailed description of the property's boundaries.[21] Nevertheless, the property's postal address was a

---

[16] See, e.g., *Hennessey v. Froehlich*, 219 Ga. App. 98, 101 (464 SE2d 246) (1995) (summary judgment inappropriate where evidence conflicts as to whether there was a meeting of the minds).

[17] *McCumbers v. Trans-Columbia*, 172 Ga. App. 275, 277 (322 SE2d 516) (1984).

[18] *Crawford v. Verner*, 122 Ga. 814, 816 (1) (50 SE 958) (1905).

[19] Id.

[20] *McCann v. Miller*, 177 Ga. App. 53, 54 (2) (338 SE2d 509) (1985).

[21] The contract stated that "[s]eller agrees to sell and purchaser agrees to purchase all that certain tract or parcel of land as more particularly described in Exhibit 'A' attached hereto and by this reference made a part hereof." Exhibit "A," however, was not attached to the contract, and in fact, there is no evidence that Exhibit "A" ever existed.

legally sufficient description because it referred to a definite parcel whose boundaries presumably could be established through extrinsic sources.[22] We note that Yi does not argue — much less present any evidence showing that — there was any confusion regarding which property was being sold or what its boundaries were. We also note that Swan Kang did not seek specific performance of the contract.[23] Thus, to survive summary judgment, Swan Kang was not required to present parol evidence of a more precise description of the land. It is enough that the postal address in the contract identified the tract such that parol evidence *could*, if necessary, define its boundaries with more precision.[24]

4. Finally, Yi argues that she properly exercised her right to cancel the agreement because the store's sales volume was less than Swan Kang had represented. Pretermitting whether the provision Yi cites would allow her to cancel the contract for that reason,[25] there is a factual dispute as to why she chose to cancel. In her affidavit, Yi states that she had observed the store for two days and determined that "there was no way the sales represented by the plaintiff could be accurate." But the notice she sent to Kang said that she was concerned about a competing business; it said nothing about Swan Kang's sales volume. Because a jury could conclude that Yi never actually verified Swan Kang's sales volume, Yi is not entitled to summary judgment on this ground.[26]

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED APRIL 21, 2000 — ■

*David W. Graybeal, Jr.,* for appellant.
*Michael Kessler,* for appellee.

[22] See *Romanik v. Buitrago*, 153 Ga. App. 886 (267 SE2d 301) (1980) (description of property was adequate even though it identified condominium to be sold only as "3200 Clairmont Drive," which was the address for the whole complex).
[23] Compare *Plantation Land Co. v. Bradshaw*, 232 Ga. 435 (207 SE2d 49) (1974).
[24] See *Romanik*, supra at 887-888.
[25] The provision is as follows: "Purchaser's verification of annual sales [of] $1.30 million should be allowed by the seller. The period of the verification would be within two weeks after the date of acceptance of the agreement."
[26] See *Re/Max Exec. v. Vacalis*, 234 Ga. App. 659, 661 (2) (507 SE2d 235) (1998).