## A00A1239. JAKEL v. FOUNTAINHEAD DEVELOPMENT CORPORATION, INC.
### (534 SE2d 199)

ELDRIDGE, Judge.

Plaintiff, Otto K. Jakel, appeals from the trial court's order granting partial summary judgment to defendant, Fountainhead Development Corporation, Inc. ("Fountainhead").

Viewed in the light most favorable to the nonmovant,[1] the evidence shows the following. Fountainhead is the developer of residential property along and adjacent to The Legends at Chateau Elan golf course. In late 1992, Frank Miller & Associates, Inc. prepared a preliminary drawing portraying the contemplated development of the Legends subdivision at Chateau Elan (the "Legends Development") for Fountainhead, which did not depict Lot 19 of Block C. In early January 1994, Jakel went to the Legends Development to look at the lots for sale. Jakel met with Philip Mulherin, Director of Development at Chateau Elan, and expressed an interest in purchasing property for investment purposes in the unplatted Legends Development along and adjacent to the Legends golf course.

After viewing the properties while playing a round of golf, Jakel decided he was interested in the property adjacent to the clubhouse. Jakel used a mobile telephone to call Mulherin, and Mulherin met with Jakel and his wife at or near the location of the property in which Jakel was interested. After meeting at the property, Jakel, his wife, and Mulherin traveled to the sales office for the development where they consulted the preliminary drawing and identified the lots in Block C of the Legends Development in which Jakel was interested; no final plat existed for Block C of the Legends Development at that time and still does not exist today. Jakel also expressed an interest in becoming a member of Legends Golf Club.

Within a few days, a document dated January 14, 1994, and written on the letterhead of The Legends at Chateau Elan was prepared by Mulherin and mailed to Jakel. The agreement read in its entirety as follows:

> This letter serves as an option agreement in consideration of $20,000 to be applied toward the purchase price of Lot #18 and potentially Lot #19 of Block C in The Legends at Chateau Elan. Option to purchase is subject to Seller's acceptance of an offer of $145,000 to purchase either lot, inclusive of membership. Regardless of the outcome of said option to purchase a homesite at the Legends at Chateau Elan,

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

$20,000 deposit shall be used as membership fee to join The Legends at Chateau Elan golf club.

While Lot 18 of Block C appeared on the preliminary plan for the Legends Development, there was no Lot 19 in Block C shown on the plans. Both Jakel and Mulherin signed the document, and Jakel returned the document to Mulherin. On January 14, 1994, Jakel also entered into "The Legends at Chateau Elan Golf Club Membership Non-Residential" agreement with Legends Golf Club. The cost of such nonresidential membership was $20,000. Jakel issued one check in the amount of $20,000, made payable to "The Legends @ Chateau." The memo line of the check provided that it was for "deposit on land." However, since January 1994, Jakel has possessed and exercised his nonresident golf membership rights at the Legends Golf Club.

Subsequently, on July 30, 1996, a revised development plan was drafted for the Legends Development. The 1996 drawing designates Block C as a site for future development and makes no reference to either Lot 18 or 19 of Block C. In late December 1997 or early January 1998, Jakel contacted Mulherin and indicated he wanted to purchase Lots 18 and 19 of Block C for $145,000 each pursuant to the January 14, 1994 agreement. Fountainhead refused to sell Jakel Lots 18 and 19 of Block C.

Jakel filed suit alleging that the January 14, 1994 agreement was an option to purchase contract and sought alternatively specific performance or damages for breach of contract. Jakel also sought recovery for damages for trespass. Fountainhead answered and moved for summary judgment. On November 24, 1999, the trial court entered an order granting Fountainhead's motion for summary judgment in part and denying the motion in part. In such order, the trial court held that:

By its terms, the document does not bind the seller ([d]efendant) to sell the property in question, for a price of $145,000[;] therefore[,] the document is not an option con-. tract. Although the document signed by the parties is not enforceable as an option contract, the [c]ourt also notes that there is ambiguity in the document. . . . Given the evidence presented at the hearing on this matter, the [c]ourt is unable consistent with the rules of contract interpretation to find, as a matter of law, that the document, signed by the parties, is without any legal effect, and since any disagreement between the parties as to the intended effect of the document is an issue of fact for the jury and not a matter of law for determination by the [c]ourt, [cit.], the court is unable to grant summary judgment on all issues.

It is from this order that Jakel appeals. In his sole enumeration of error, Jakel contends the trial court erred in granting partial summary judgment to Fountainhead. We disagree and affirm the ruling of the trial court.

The language of the agreement between Fountainhead and Jakel is clear and unambiguous, requiring no construction by the court, nor does it present an issue for a jury. "If the terms used [in a contract] are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense." (Citations and punctuation omitted.) *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (455 SE2d 601) (1995).

An option to purchase land is a contract where an owner agrees with another person that he shall have the right to purchase the described property within *a specified time period at a fixed price, on agreed terms and conditions. Chatham Amusement Co. v. Perry*, 216 Ga. 445, 446 (117 SE2d 320) (1960); *Bowles v. Babcock & Wilcox Co.*, 209 Ga. 858 (76 SE2d 703) (1953). The contract binds the seller to sell but leaves it discretionary with the other party to buy. Id. An option contract is subject to the rules governing other contracts. Id.

In this case, the agreement between the parties did not bind the seller to sell. The agreement clearly and unambiguously gave Fountainhead the right to refuse any offer made by Jakel. The document merely permitted Jakel to offer to purchase the lots subject to Fountainhead's right of refusal, a right that Fountainhead exercised. In a true option contract, notice by the holder of a written option to purchase land that he elects to purchase the realty at the price and upon the terms stated in the option contract converts the option contract into a contract for the sale of land which the purchaser may enforce against the seller. *Chatham Amusement Co. v. Perry*, supra. Under the facts of this case, Jakel's alleged election to purchase the lots vested no such rights in him. Given that Fountainhead retained the discretion to reject Jakel's offer under the terms of the agreement, the contract lacked mutuality. "It is well settled that contracts conditioned upon discretionary contingencies lack mutuality." (Citation and punctuation omitted.) *Giacalone v. Tuggle*, 141 Ga. App. 123, 124 (4) (232 SE2d 589) (1977).

Further, an option contract for the sale of realty comes within the Statute of Frauds and "must describe the land to be sold with the same degree of certainty as that required of a deed conveying realty." (Citations and punctuation omitted.) *Firstline Corp. v. Valdosta-Lowndes County Indus. Auth.*, 236 Ga. App. 432, 433 (511 SE2d 538) (1999). Here, the agreement described the property as Lot 18 and *potentially* Lot 19 of Block C in The Legends at Chateau Elan. Only a preliminary plan existed for Block C of The Legends at Chateau Elan when the agreement was signed by the parties; there was no

recorded plat or survey. Only Lot 18 of Block C existed on the preliminary plan; there was no Lot 19. Subsequent to the parties signing the agreement and prior to Jakel attempting to exercise his alleged option, the preliminary plan was revised. Jakel testified that at the time he entered into the agreement, he understood that the boundaries of the lots were preliminary and subject to change and that the lots had not been platted. The revised preliminary plan showed Block C as future development and did not show either Lot 18 or 19 within Block C. To date the revised preliminary plan has not been changed to include Lots 18 and 19 in Block C, and there is not an existing recorded plat or survey of Block C. Hence, the agreement did not describe the property with sufficient particularity.

Additionally, the alleged option lacked a time period within which Jakel could exercise the alleged option to purchase. While time is not generally of the essence in a contract, "an option is peculiarly a contract of which time is of the essence." (Citation and punctuation omitted.) *Bowden v. Mews Dev. Corp.*, 247 Ga. 546, 547 (2) (277 SE2d 653) (1981). "[B]ecause of the singular one-sidedness of an option contract in creating, for a stated duration, an irrevocable offer of the optionor, the law requires that the optionee perform all of its obligations under that contract with particular timeliness." *Barkley-Cupit Enterprises. v. Equitable Life &c.*, 157 Ga. App. 138, 141 (276 SE2d 650) (1981).

In this case, because the agreement between the parties lacks mutuality in that it fails to bind Fountainhead to sell, does not describe the property with sufficient particularity, and fails to state a time within which Jakel could exercise his alleged option to purchase the property, the agreement between the parties does not contain the essential elements of an option contract for the sale of land and cannot be enforced as such. The only effect of the agreement is to allow a set-off of $20,000 in the event Jakel purchases a lot in the Legends Development in the future and to provide Jakel with a nonresident membership in the Legends Golf Club.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 5, 2000.

*Richard C. Bellows,* for appellant.
*Stewart, Melvin & Frost, Mark W. Alexander,* for appellee.