A01A0591. BULLOCH SOUTH, INC. et al. v. GOSAI et al.
(550 SE2d 750)

RUFFIN, Judge.

Hitendrakumar Gosai and Dipti Gosai entered a series of contracts with Bulloch South, Inc. d/b/a Red Carpet Inn for the purchase of a hotel. The purchase fell through, and the Gosais sued Bulloch South, Charles Sutton, and Barbara Sutton for fraud and conversion stemming from defendants' failure to return $20,000 in refundable deposits. The trial court granted the Gosais' motion for summary judgment, and this appeal ensued. For reasons that follow, we affirm in part and reverse in part.

When ruling on a motion for summary judgment, the trial court should give the party opposing the motion the benefit of all reasonable doubt, construing the evidence most favorably toward the opposing party.[1] "When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence."[2]

Viewed in a light most favorable to the defendants, the record

---

(1992); *Cooper v. State*, 178 Ga. App. 709, 715 (6) (345 SE2d 606) (1986).

[18] See *Harper v. State*, 241 Ga. App. 865, 868 (3) (528 SE2d 317) (2000).

[1] See *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412 (1) (532 SE2d 122) (2000).

[2] (Punctuation omitted.) Id. at 412-413.

shows that in August 1997, Charles Sutton and Hitendrakumar Gosai signed an abbreviated contract for the sale of the Red Carpet Inn located at 2875 U. S. Highway 301 South in Register, Georgia. The contract provided, in pertinent part, that it was

> between Hitendrakumar J. Gosai as a buyer and Bulloch South, Inc., seller for the [property] for the total purchase price of $1.6 million, with 5 acres of land attached to this property. Upon the condition of getting financing within 60 days. Financing would be 80-90% of the total price. If Hitendrakumar J. Gosai is unable to get financing within 60 days, then Bulloch South, Inc. must return the deposit of $10,000 back to buyer in full.

The contract did not contain either the interest rate at which Gosai was to obtain financing or a detailed description of the property. In Charles Sutton's affidavit, however, he averred that he and the Gosais discussed the interest rate during negotiations and determined that an interest rate between nine and one-half and ten percent was acceptable. Sutton also stated that he gave Hitendrakumar Gosai the plat and legal description of the property, which Gosai needed in order to obtain financing.

On October 28, 1997, Charles Sutton and Hitendrakumar Gosai signed a second agreement, which identified "Barbara Sutton, president, Bulloch South, Inc.," as the seller and both Hitendrakumar and Dipti Gosai as the buyers of the hotel. The contract provided that the

> [b]uyers have already paid $10,000. A 60 day option will be given in return for payment of $10,000, to be paid by Nov. 12, 1997, making a total of $20,000 paid so far. In the event that [the buyers] are not in a position to secure a loan, an additional $180,000 will be due at closing. In the event that Mr. Gosai cannot secure a loan he will get ½ of his money back ($10,000). Or, we (Bulloch South) will secure a loan that would be transferable and would give Mr. Gosai some additional time to raise the balance of the $200,000, which would be $180,000.

The contract was signed by Charles Sutton and Hitendrakumar Gosai.

On November 14, 1997, Charles Sutton and Hitendrakumar Gosai signed a third agreement, which Barbara Sutton also signed as a witness. This handwritten agreement provided that the

> [o]ption *or* sales contract done on 10/28/97 in between two parties, buyer (H. J. Gosai) and seller Bulloch South

(Charles and Barbara Sutton as an acting agents) [sic] is extended for *30* (thirty) days further more [sic] from today's date. Buyer is giving $10,000.00 . . . (ten thousand) [as] a 2nd refundable deposit to the seller today. ½ is refundable.

(Emphasis in original.)

Evidently, the Gosais were unable to obtain financing. In August 1998, the Gosais sued Bulloch South, Charles Sutton, and Barbara Sutton for the return of $20,000 paid in deposits.[3] In their answers, the defendants asserted that the first $10,000 deposit was refundable only if the Gosais "were unable to obtain financing after making their best efforts in good faith." With respect to the second $10,000 deposit, defendants admitted receiving "$10,000 for an option, but denie[d] that said payment was unconditionally refundable. Furthermore, Defendant[s showed] that one half of the option payments made were nonrefundable under any condition."

The Gosais moved for partial summary judgment, arguing that the contracts were "void as a matter of law due to their lack of essential terms." Specifically, the Gosais argued that the absence of either a specified interest rate or a legal description of the property was fatal to the contracts. The Gosais also argued that Barbara Sutton ratified the contract signed by Charles Sutton, thus "obligat[ing Bulloch South] on behalf of Barbara Sutton."

After an unrecorded hearing, the trial court issued an order in which it found that the contracts were unenforceable based upon the lack of description of the property to be sold. Accordingly, the trial court directed defendants to return the $20,000 in deposits to the Gosais. The trial court did not expressly address the Gosais' argument that Barbara Sutton ratified the contract. In granting the Gosais' motion, however, the court arguably concluded that all defendants were equally liable.

1. In their first enumeration of error, the defendants contend that the trial court erred in granting summary judgment, asserting that the lack of a property description within the contracts did not render them unenforceable. We agree.

To satisfy the statute of frauds, "a contract for the sale of land . . . must describe the property to be sold with the same degree of certainty as that required in a deed conveying realty."[4] However, a perfect description is not required.[5] All that is required is that the

---

[3] The Gosais also sought punitive damages for defendants' alleged conversion. In its order, the trial court concluded that there was no evidence supporting the claim for punitive damages and entered judgment for defendants on this issue. As the Gosais have not appealed this aspect of the trial court's order, we do not address it on appeal.

[4] *Barnes v. Whatley*, 221 Ga. App. 110, 111-112 (1) (470 SE2d 498) (1996).

[5] See *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 688 (3) (534 SE2d 145) (2000).

contract furnish a key to the identification of the land.[6] "If the premises are so referred to [within the contract] as to indicate [the seller's] intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract."[7] "The legal sufficiency of a description is a question of law for the court."[8]

The initial contract described the property as the Red Carpet Inn at 2875 U. S. Highway 301 South in Register, Georgia, "with 5 acres of land attached to this property." Where, as here, the parties are not seeking specific performance of the contract,[9] such postal address provides a legally sufficient description to survive summary judgment.[10] This is particularly true when there is no indication that the parties are confused about the boundaries of the property being sold.[11] In this case, although a plat was not incorporated in the contract, Charles Sutton avers that he provided both the plat and legal description to Hitendrakumar Gosai during negotiations. Thus, the record suggests that there was no confusion as to the property being sold. Under these circumstances, the trial court erred in granting summary judgment to the Gosais on this basis.

Our analysis, however, does not end here. Because a grant of summary judgment will be affirmed if it is right for any reason,[12] we must address whether the absence of a specified interest rate in the contracts renders the contracts unenforceable.

We note, at the outset, that "[t]he policy of the law is against the destruction of contracts on the ground of uncertainty if it is possible in light of the circumstances under which the contract was made to determine the reasonable intention of the parties."[13] "The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon."[14] And, if the words used in the contract are plain and clear, the contract should be construed by the court rather than by a jury.[15]

(a) We turn first to the August 1997 contract, which contained

---

[6] Id.

[7] (Punctuation omitted.) Id.

[8] Id.

[9] Compare *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 236 (267 SE2d 816) (1980) (" 'A court of equity will not decree the specific performance of a contract for the sale of land unless there is a definite and specific statement of the terms of the contract.' ").

[10] See *Swan Kang*, supra.

[11] See id. at 689.

[12] See *Fulton County Bd. of Tax Assessors v. Visiting Nurse &c. of Metro. Atlanta*, 243 Ga. App. 64, 67 (3) (532 SE2d 416) (2000).

[13] (Punctuation omitted.) *Jones v. Hill*, 246 Ga. App. 194, 196 (539 SE2d 893) (2000).

[14] (Punctuation omitted.) *Denton v. Hogge*, 208 Ga. App. 734, 735 (2) (431 SE2d 728) (1993).

[15] See *Sewell v. Hull/Storey Dev.*, 241 Ga. App. 365, 367 (1) (526 SE2d 878) (1999).

the initial agreement to sell the hotel. It is undisputed that the contract did not include the interest rate at which the Gosais were to obtain financing. As the Gosais note, "[t]he appellate courts of Georgia have consistently held that such a contract is too vague and indefinite to be enforced since the failure to specify at what rate the buyer is to obtain a mortgage loan causes a failure of a condition precedent to the enforceability of the contract."[16]

On appeal, the defendants argue that, although not contained in the contract, the parties discussed the interest rate at which the Gosais were to obtain a mortgage and "[s]uch parol evidence is admissible to explain [any] ambiguity." We disagree. "There is a difference between ambiguity, which imports doubleness and uncertainty of meaning, and that degree of indefiniteness which imports no meaning at all. The former can be explained by parol. The latter cannot be merely explained, but a deficiency must be supplied."[17] The absence of an interest rate constitutes a deficiency in the contract.[18] As such, "[p]arol or extrinsic evidence cannot supply the deficiency of the missing essential element" in a contract for the sale of land.[19] Thus, the trial court correctly concluded that the August 1997 contract was unenforceable and properly granted summary judgment to the Gosais on Count 1 of their complaint.

(b) We turn next to the October 1997 contract, which is titled "OPTION OR SALES CONTRACT." The first two paragraphs of this contract reiterate and clarify the Gosais' agreement to purchase the hotel for $1.6 million. As with the first contract, this contract also lacks a specified interest rate at which the Gosais were to obtain financing. Accordingly, to the extent that this agreement represented a contract for the sale of land, it is also unenforceable.[20]

This contract, however, contains more than a mere agreement to sell the property. As stated in the title, it also contains an option contract. Paragraphs three and four of the contract provide, in pertinent part, that "[a] 60 day option will be given in return for payment of $10,000, to be paid by Nov. 12, 1997, making a total of $20,000 paid so far. . . . In the event that Mr. Gosai cannot secure a loan he will get ½ of his money back ($10,000)." Thus, the issue is whether the option agreement may be severed from the contract for the sale of the property.

Pursuant to OCGA § 13-1-8 (a), "[a] contract may be either entire

---

[16] *Homler v. Malas*, 229 Ga. App. 390, 391 (494 SE2d 18) (1997).

[17] (Punctuation omitted.) *Wiley*, supra at 238.

[18] See *Bonner v. Jordan*, 218 Ga. 129-130 (126 SE2d 613) (1962); *Denton*, supra; *Homler*, supra.

[19] *Wiley*, supra at 237-238.

[20] See *Homler*, supra.

or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder." "[T]he 'primary task' in determining contract severability remains that of ascertaining the intention of the parties."[21] "The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations."[22] Moreover,

> where an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more and when taken independently of certain subsidiary provisions in the instrument would render the instrument valid as a contract, such subsidiary provisions will not, unless their terms imperatively demand it, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void.[23]

Here, in addition to the agreement to sell the hotel for $1.6 million, the contract contained an express agreement that the Gosais pay $10,000 "in return for" a "60 day option." Such separate agreement with separate consideration indirectly expresses an intent that the agreement be severable. As it is severable, the option agreement is enforceable "if either a specific price is provided for in the agreement or a practicable mode is provided by which the price can be determined by the court without any new expression by the parties themselves."[24]

The contract at issue contained a price for the hotel, and the Gosais provide no legal authority for the proposition that an interest rate must be included in such option contract. Accordingly, where a contract for the sale of real estate expressly contains a separate promise under which the seller gives another party an option to purchase the property at a fixed price for a certain time, that portion of the contract is not unenforceable due to the lack of a financing provision. To hold otherwise would allow the Gosais to escape all obligations incurred under the contract due to the absence of a specified

---

[21] *Nat. Consultants v. Burt*, 186 Ga. App. 27, 34 (3) (366 SE2d 344) (1988).

[22] *Grove v. Sugar Hill Investment Assoc.*, 219 Ga. App. 781, 786 (3) (466 SE2d 901) (1996).

[23] (Punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 541 (2) (466 SE2d 27) (1995).

[24] (Punctuation omitted.) *Pettigrew v. Collins*, 246 Ga. App. 207, 208 (539 SE2d 214) (2000).

interest rate.[25] Such result would be patently unfair, as the contract was sufficient to prevent the defendants from selling the property to any party other than the Gosais for the duration of the option period.[26]

(c) We turn now to the November 1997 agreement, which appears to have been handwritten at the bottom of the October 1997 contract. This contract extends the option to purchase for an additional 30 days. It also states that the buyer "is giving $10,000 (ten thousand) as a 2nd refundable deposit to the seller today. ½ is refundable."[27] Thus, it is clear that this contract, like the October 1997 contract, constitutes an option agreement, which, as discussed supra, is enforceable notwithstanding the lack of a specified interest rate. It follows that the trial court erred in finding, as a matter of law, that the Gosais were entitled to the return of the entire $10,000 paid for the option to purchase the hotel.

2. In their second enumeration of error, defendants assert that the trial court erred in granting the Gosais' motion for summary judgment against Barbara Sutton in her individual capacity. We note, at the outset, that it is unclear whether the Gosais sought to have Barbara Sutton held liable in her personal capacity. In their motion for summary judgment, the Gosais argued that she "ratified" the contract signed by Charles Sutton.[28] The defendants, however, clearly interpreted this argument as an attempt to hold Barbara Sutton liable in her personal capacity. Indeed, in addition to suing Bulloch South, the Gosais named both Charles and Barbara Sutton, in their individual capacities, in the complaint. Thus, the trial court's order arguably can be construed as holding Barbara Sutton personally liable. To the extent that the order can be construed in this way, we agree that the trial court erred in granting summary judgment.[29]

The undisputed evidence demonstrates that all of the contracts were between the Gosais and Bulloch South, which, as the Gosais acknowledge in their complaint, "is a corporation licensed to do business in Bulloch County, Georgia." "One who deals with a corporation

[25] See *Brack v. Brownlee*, 246 Ga. 818 (273 SE2d 390) (1980).

[26] See *Jakel v. Fountainhead Dev. Corp.*, 243 Ga. App. 844, 846 (534 SE2d 199) (2000) ("The [option] contract binds the seller to sell but leaves it discretionary with the other party to buy.").

[27] Although it appears from the contracts that the Gosais paid the defendants three "deposits" of $10,000, the pleadings make clear that, in fact, the Gosais paid two $10,000 payments for a total of $20,000.

[28] Arguably, the Gosais were merely arguing that, having ratified the contract, Barbara Sutton, as president of Bulloch South, bound the company. The defendants, however, concede that the corporation was bound by the contract.

[29] Indeed, although the Gosais have not conceded this point on appeal, their brief contains absolutely no argument or citation of authority to support their contention that Barbara Sutton should be liable in her personal capacity.

as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence for the purpose of holding the owner liable."[30] Although whether to pierce the corporate veil is normally a jury issue, "in order for the trial court to submit the issue to a jury, the plaintiff must introduce evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud, or to evade statutory, contractual or tort responsibility."[31] In their motion for summary judgment, the Gosais presented no evidence that the corporate arrangement was a sham. Accordingly, the trial court erred to the extent that it found Barbara Sutton liable in her individual capacity as a matter of law.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 22, 2001.

*Merrill, Stone & Hamilton, Jesse C. Stone, Lance J. Hamilton*, for appellants.

*Emmett L. Goodman, Jr.*, for appellees.

---

[30] (Punctuation omitted.) *Garrett v. Women's Health Care of Gwinnett*, 243 Ga. App. 53, 55 (2) (532 SE2d 164) (2000).

[31] (Punctuation omitted.) *Hayes v. Collins*, 245 Ga. App. 704, 705 (538 SE2d 785) (2000).