A03A0589. MAKOWSKI v. WALDROP et al.

(584 SE2d 714)

RUFFIN, Presiding Judge.

William Waldrop and Linda Richards ("appellees") sued Daniel Makowski for equitable cancellation of a lease-purchase option agreement entered into between Waldrop and Makowski. Makowski counterclaimed for fraud, breach of contract, and specific performance of the purchase option. The parties filed cross-motions for summary judgment. In a detailed order, the trial court granted appellees' motion, while denying Makowski's motion. Makowski appeals, and for reasons that follow, we affirm.

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable inferences most favorably to the nonmoving party.[2]

Viewed in this manner, the evidence shows that Waldrop and Makowski signed a lease-purchase agreement dated April 7, 2000, through which Waldrop leased to Makowski a parcel of land in Forsyth County for six months. Paragraph 10 of the agreement also provided:

> [Makowski] shall have the option to renew and extend this lease for an additional 5 terms of equal length by giving written notice to [Waldrop] prior to the expiration of each lease term or extension. . . . [Makowski] shall have the exclusive right during the term or any extension thereof to buy the Property at the current value as determined by using [the] Forsyth County Tax Assessor's value for the year first above written plus fifteen percent (the price based on the first year would be Four hundred five thousand nine

---

[1] OCGA § 9-11-56 (c).

[2] See Bulloch South, Inc. v. Gosai, 250 Ga. App. 170 (550 SE2d 750) (2001).

hundred fifty dollars), with all proceeds from this agreement applied to the purchase price.

The parties do not dispute that Waldrop and Makowski signed this agreement. The events leading up to the signing, however, are hotly contested.

Makowski, a self-described "professional real estate person, whose business is to research properties, approach owners and make deals," testified that, in 1999, he became interested in purchasing undeveloped property north of Atlanta. He conducted research and learned that Waldrop owned suitable real estate ("the property").

According to Makowski, he approached Waldrop at Waldrop's home on April 7, 2000, indicating that he wanted to lease, then buy, the property. Waldrop agreed, and Makowski produced the lease-purchase agreement, which Waldrop signed. Pursuant to the written contract, Makowski gave Waldrop $5,000, representing rent for the initial six-month lease term plus a security deposit. The following day, Makowski and Waldrop signed another copy of the lease-purchase agreement in front of a notary public. Makowski recorded the notarized agreement in Forsyth County on April 10, 2000.

In contrast, Waldrop, who has a third grade education and cannot read, testified that he only agreed to lease the property for one six-month term and never intended to give Makowski a purchase option. According to Waldrop, he signed a document on April 7, 2000, leasing the property to Makowski for six months. The next day, however, Makowski asked him to sign additional documents. When Makowski assured him that the new documents simply authorized Makowski to make improvements on the property, Waldrop signed the papers. Shortly thereafter, he learned that one of the documents gave Makowski options to renew the lease and purchase the property.

One month later, Waldrop sued Makowski to cancel the lease-purchase agreement on several grounds, including that he did not own the property when he signed the agreement. Waldrop testified that, in December 1999, he executed a warranty deed transferring the property to Linda Richards, an old friend. Richards, who recorded her warranty deed on May 8, 2000, joined the lawsuit. Makowski counterclaimed for breach of contract, fraud, and specific performance of the purchase option.

The appellees moved for summary judgment, arguing that the lease-purchase agreement is unenforceable because it contains an inadequate property description. Makowski filed a cross-motion for summary judgment on his specific performance claim. Finding the agreement unenforceable, the trial court granted the appellees' motion and denied Makowski's request for specific performance. We find no error.

1. (a) The statute of frauds requires that a contract for the sale of land, or an option to purchase land, be in writing.[3] To satisfy the statute, the sales or purchase option contract must contain a clear and definite description of the property.[4] Although the description need not be perfect, the contract

> must furnish the key to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable.[5]

A property description fails as indefinite if "no particular tract of land is pointed out, but even a vague description will suffice if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established."[6] The adequacy of a property description is a legal question for the court.[7]

The lease-purchase agreement identifies the property as "the premises situated at Howard [Road] and more particularly described as all that tract or parcel of land which comprises the 81.14+/- acres lying and being in Land Lots 1153-1154 of the Third District and First Section of Forsyth County, Georgia." Makowski does not contend that this description, standing alone, adequately identifies the property. Instead, he argues that the agreement contains a key "leading unerringly to the property."

Makowski's key rests in the purchase option, which establishes the purchase price as the Forsyth County Tax Assessor's value, plus 15 percent. The provision further notes that the price, based on the 2000 assessed tax value, is $405,950. According to Makowski, this key leads to the only tax parcel in land lots 1153-1154 — parcel no. 011-009 — and the tax appraisal for that parcel. When increased by 15 percent, the 2000 tax value of the parcel equals the purchase amount established in paragraph 10 of the lease-purchase agree-

---

[3] See OCGA § 13-5-30 (4); *Pacific Grove Holding v. Hardy*, 243 Ga. App. 161, 165 (1) (b) (532 SE2d 710) (2000); *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 236 (267 SE2d 816) (1980).
[4] See *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 688 (3) (534 SE2d 145) (2000).
[5] (Punctuation omitted.) Id.
[6] (Punctuation omitted.) Id.
[7] See id.

ment. Furthermore, Makowski argues, the appraisal lists Waldrop as the owner and mentions a warranty deed, dated October 22, 1960, which describes the property by metes and bounds. The warranty deed also references an October 17, 1960 survey showing the property's precise location.

Even assuming, however, that the alleged key in the lease-purchase agreement leads to the cited documents, we cannot agree that these documents sufficiently identify the property. The tax appraisal, as well as the lease-purchase agreement, references a parcel of 81.14 acres located in land lots 1153 and 1154. The October 1960 warranty deed and survey, however, describe 93.45 acres of land situated in land lots 1153, 1154, and 1223.

As Makowski notes, the deed and survey offer a precise property description. But, given the discrepancy between the acreage and location provided in those documents and the information contained in the tax appraisal, we cannot agree that the description necessarily corresponds to the property appraised for the 2000 tax value. The alleged "key" in the lease-purchase agreement thus does not "open the door to extrinsic evidence which leads unerringly to the land in question."[8] And the uncertainty caused by this discrepancy is particularly troublesome in light of Makowski's request for specific performance. As noted by our Supreme Court,

> [s]pecific performance of a contract for the sale of land will not be granted unless the land is clearly identified. A decree for specific performance operates as a deed. Therefore, the decree should contain a description as definite as that required to support a deed.[9]

On appeal, Makowski argues that the property description is not insufficient simply because the acreage and land lots mentioned in the lease-purchase agreement do not exactly match the information provided in the October 1960 warranty deed and survey. But the variance here is not restricted to the lease-purchase agreement. It also appears in the tax appraisal — the initial key allegedly leading to the property's precise location. Under these circumstances, the property description does not satisfy the statute of frauds.[10]

---

[8] *Gateway Family Worship Centers v. H.O.P.E. Foundation Ministries*, 244 Ga. App. 286, 287 (2) (535 SE2d 286) (2000).

[9] (Citations omitted.) *Plantation Land Co. v. Bradshaw*, 232 Ga. 435, 438 (207 SE2d 49) (1974); cf. *Bulloch South*, supra at 173 ("Where, as here, the parties are not seeking specific performance of the contract, [a] postal address provides a legally sufficient description to survive summary judgment.") (footnote omitted).

[10] See *Gateway*, supra at 288; cf. *Golden v. Frazier*, 244 Ga. 685, 686 (1) (261 SE2d 703) (1979) (property description not inadequate where contract contained typographical error

(b) Makowski further contends that his partial payment under the lease-purchase agreement, as well as his possession of and improvements to the property, removes the agreement from the statute of frauds. Under OCGA § 23-2-131 (a), "[t]he specific performance of a parol contract as to land shall be decreed . . . if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." Part performance justifying such a decree arises from "partial payment accompanied with possession, or possession alone with valuable improvements."[11] Citing this equitable exception to the statute of frauds,[12] Makowski argues that the lease-purchase agreement is enforceable, regardless of whether the agreement adequately describes the property. Again, we disagree.

As an initial matter, we note that Makowski explicitly requests specific performance of the purchase option contained in the *written* lease-purchase agreement. Because he seeks to enforce a written agreement — not an oral contract — OCGA § 23-2-131 does not apply.[13] Furthermore, even if the agreement at issue were oral, Makowski would not be entitled to relief. Construing this equitable provision, our Supreme Court has held:

> [w]hen a party seeking specific performance of an oral contract to sell realty relies on the principle of possession with improvements, it must be shown that the possession and improvements arose by virtu[e] of and in the faith of the oral contract or promise, so as to take the case out of the statute of frauds and constitute the equivalent of a writing by showing acts unequivocally referring to the alleged contract or promise. Where a party takes possession under an oral contract to rent, and also alleged an oral option to purchase, the possession is under the tenancy and cannot also be shown to be in reliance on the option.[14]

---

regarding land lot number and "the other description of the property was sufficiently certain to make identification practicable"). Makowski does not argue, and thus we need not address whether, the trial court erred in finding the *entire* lease-purchase agreement, including the six-month lease provision, barred by the statute of frauds. See *Powell v. Estate of Austin*, 218 Ga. App. 446, 448 (1) (462 SE2d 378) (1995) ("To comply with the Statute of Frauds, a lease lasting longer than one year must be in writing.").

[11] OCGA § 23-2-131 (b).

[12] See *Engram v. Engram*, 265 Ga. 804, 805 (1) (463 SE2d 12) (1995); see also OCGA § 13-5-31 (3) (statute of frauds does not apply to unwritten agreement "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance").

[13] See *Pettigrew v. Collins*, 246 Ga. App. 207, 208 (539 SE2d 214) (2000).

[14] *Grist v. Foster*, 246 Ga. 565, 566 (272 SE2d 297) (1980).

The record shows that Makowski took possession under the terms of the lease on April 8, 2000. At that point, Makowski testified, he had paid Waldrop $5,000, constituting rent and a security deposit for the leased premises. The following day, Makowski began "improving" the property. Specifically, he cleared debris from the land, cleaned out one of the existing buildings, and moved equipment and material onto the premises. According to Makowski, he performed this work "in reliance upon the option" in the lease-purchase agreement. Approximately six months later, after this lawsuit began, he sought to renew the lease for another term, and he did not attempt to exercise the purchase option until December 28, 2000.

Under these circumstances, we find that Makowski's possession and $5,000 payment arose by virtue of the lease agreement — not the purchase option.[15] And although Makowski testified that he improved the property in reliance on the option, improvements alone do not permit equitable relief.[16] Accordingly, equity cannot remove the lease-purchase agreement from the statute of frauds.[17]

(c) Makowski also argues that equitable estoppel precludes appellees' statute of frauds defense because Waldrop fraudulently entered the lease-purchase agreement without informing Makowski about the prior conveyance to Richards. Again, we disagree.

" 'Estoppel may be used to prevent a party from denying at the time of litigation a representation that was made by that party and accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon.' "[18] Thus, "[t]he conduct of the party against whom the estoppel is sought must amount to a concealment or false representation of material facts inconsistent with the position the party subsequently attempts to assert."[19] An estoppel arises " 'where it would be more unjust and productive of evil to hear the truth than to forbear investigation.' "[20] The law, however, does not generally favor estoppels, which exclude the truth.[21]

Under these principles, appellees might be estopped from claiming that the prior conveyance renders the lease-purchase agreement unenforceable. Summary judgment, however, was not awarded on

---

[15] See id.; see also *Engram*, supra at 805-806; cf. *Smith v. Cox*, 247 Ga. 563, 564-565 (277 SE2d 512) (1981) (tenants continued to make monthly payments to landlord after expiration of written lease agreement, providing evidence that they were making payments and in possession of property "under the terms of partially executed sale of real estate which exists by virtue of their acceptance of the option to purchase").

[16] See OCGA § 23-2-131; *Grist*, supra.

[17] See *Engram*, supra; *Grist*, supra. On appeal, Makowski does not claim that partial performance renders the lease provision enforceable.

[18] *Wilson v. Keheley & Co.*, 177 Ga. App. 769, 770 (2) (341 SE2d 245) (1986).

[19] *Collins v. Grafton, Inc.*, 263 Ga. 441, 443 (2) (435 SE2d 37) (1993).

[20] *Smith v. Direct Media Corp.*, 247 Ga. App. 771, 773 (1) (544 SE2d 762) (2001).

[21] See *Collins*, supra.

that basis. Instead, as properly found by the trial court, the agreement did not satisfy the statute of frauds. We fail to see — and Makowski makes no effort to explain — how Waldrop's alleged misrepresentation contradicts appellees' position regarding the sufficiency of the contract terms or misled Makowski regarding the contract, which, incidentally, Makowski presented to Waldrop. It follows that equity does not require an estoppel here.[22]

2. Finally, Makowski argues that, because the lease-purchase agreement is enforceable, the trial court erred in granting appellees summary judgment on his breach of contract and fraud claims. In Division 1, however, we found the agreement unenforceable. Accordingly, this claim of error presents no basis for reversal.

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JULY 3, 2003 — ▮

▮

*Alembik, Fine & Callner, Ronald T. Gold*, for appellant.
*Talley & Darden, Jeffrey B. Talley, David P. Darden*, for appellees.