**SECOND DIVISION
RICKMAN, C. J.,
MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 17, 2022**

# In the Court of Appeals of Georgia

A22A0361. BENNETT v. NOVAS.

MILLER, Presiding Judge.

In this interlocutory appeal, Luis Novas filed suit against Ronda Bennett for personal injuries he sustained from a vehicular accident caused by Bennett. Bennett appeals from the trial court's order denying her motion to enforce a settlement agreement, arguing that her insurance carrier's request for clarification of the terms in Novas' offer did not constitute a counteroffer, and so a binding settlement agreement was reached between the parties. For the reasons that follow, we conclude that there was no binding settlement agreement between the parties, and we affirm the trial court's order denying Bennett's motion to enforce the settlement agreement.

We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to

succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citation omitted.) *Yim v. Carr*, 349 Ga. App. 892, 900 (2) (827 SE2d 685) (2019).

The facts of this case are largely undisputed. In the early evening hours of January 12, 2020, Novas was riding his motorcycle along E.E. Butler Parkway near Gainesville, Georgia. As Novas was traveling straight along the parkway, he stopped at a red traffic light. Bennett, who was traveling along E.E. Butler Parkway from the opposite direction, approached the same traffic light as Novas and moved into the left turn lane. When the traffic light turned green, Novas proceeded through the intersection and was struck by Bennett as she attempted to make a left turn. The impact of the collision threw Novas from his motorcycle onto the pavement, and he sustained injuries to his pelvis, bladder, ribs, lungs, and stomach.

At the time of the accident, Progressive Mountain Insurance Company ("Progressive Insurance") was the insurance provider for John Bennett, who was the named insured under the policy while Ronda Bennett was listed as a driver under the

policy. On June 4, 2020, Novas sent a letter to Progressive Insurance, proposing to settle his claims against the company and Ronda Bennett. Specifically, the letter stated in part:

> I would like to resolve my personal injury claim against Ronda Bennett and [Progressive Insurance]. I will give you thirty days from the date you receive this letter according to the green return receipt provided by the postal service to accept this offer. Your acceptance of this offer must be made in writing to me, Luis Melendez Novas[.]. . . I seek the full $25,000.00 liability insurance policy limit. In exchange for the policy limit, I will release all claims I have against Ronda Bennett and [Progressive Insurance] subject to a limited liability release based on Georgia Code Section 33-24-41.1 that will allow me to pursue other insurance coverage from other insurance companies and policies if any exist. This offer is contingent upon execution of an affidavit by [Progressive Insurance] that there are no other insurance policies that provide coverage for this wreck. I am making this offer based on Georgia Code Section 9-11-67.1. . . . Payment must be made to me within 10 days after your written acceptance of my offer to settle.

On June 10, 2020, Progressive Insurance sent a letter to Novas, acknowledging Novas' offer to settle his claims against Bennett and Progressive Insurance. Progressive Insurance then stated in the letter that John Bennett was the insured under

the policy, and posed the following question to Novas: "Could you please clarify if John F. Bennett can also be named on the limited liability release?" Novas did not initially respond to this letter. On July 7, 2020, Progressive Insurance sent Novas a letter "accepting" Novas' offer, along with a check for $25,000 and an affidavit stating that there were no other policies that could provide coverage for the accident. Novas returned the check to Progressive Insurance and informed Progressive Insurance that it had failed to properly accept his offer because its request to add John Bennett to the release constituted a counteroffer.

Novas subsequently filed suit a negligence action against Bennett. Bennett answered the complaint and filed a motion to enforce the settlement agreement, arguing that a binding settlement agreement was reached between the parties. The trial court denied the motion after a hearing, concluding that Progressive Insurance's response letter to Novas requesting to add John Bennett to the release constituted a counteroffer. The trial court certified its ruling for immediate review, and this interlocutory appeal followed.

In her sole enumeration of error, Bennett argues that the trial court erred by denying her motion to enforce the settlement agreement because Progressive Insurance's response letter to Novas merely sought clarification of the terms of

Novas' offer in accordance with OCGA § 9-11-67.1 and that Novas' offer was unequivocally accepted without variance. We conclude that Progressive Insurance's response letter constituted a counteroffer and that Novas' offer was not unequivocally accepted.

(a) As to Bennett's claim that Progressive Insurance's response letter was an attempt to seek clarification, we first note that

> [u]nder Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. *To constitute a contract, the offer must be accepted unequivocally and without variance of any sort.* No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced. In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent.

(Citation omitted; emphasis supplied.) *Wright v. Nelson*, 358 Ga. App. 871, 874 (856 SE2d 421) (2021).

OCGA § 9-11-67.1 delineates the essential terms that must be present in an offer to settle, and they include:

> (1) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; (2) Amount of monetary payment; (3) The party or parties the claimant or claimants will release if such offer is accepted; (4) The type of release, if any, the claimant or claimants will provide to each releasee; and (5) The claims to be released.

OCGA § 9-11-67.1 (a) (1) - (5) (2013).[1] After receiving an offer to settle, "the recipients shall have the right to seek clarification regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts. An attempt to seek reasonable clarification shall not be deemed a counteroffer." OCGA § 9-11-67.1 (d) (2013). However, "[a] purported acceptance of a plaintiff's settlement offer which imposes conditions or *attempts to release parties other than the named defendant-offeree will be construed as a counter-offer to the offer to settle for the policy limits.*" (Emphasis supplied.) *Herring v. Dunning*, 213 Ga. App. 695,

---

[1] OCGA § 9-11-67.1 (2013) was in effect at the time of this incident.

6

698 (446 SE2d 199) (1994); see also *Pritchard v. Mendoza*, 357 Ga. App. 283, 288 (850 SE2d 472) (2020) ("A purported acceptance of an offer that varies *even one term* of the original offer is a counteroffer.") (citation omitted).

The facts of this case bear some resemblance to *Yim v. Carr*, 349 Ga. App. 892 (827 SE2d 685) (2019). There, the plaintiff offered to settle her claims against the defendant that arose from a traffic accident, and she sent the defendant a limited liability release stating that only he would be released from her claims. Id. at 900-901 (2). The defendant's insurance carrier then sent the plaintiff a letter purporting to accept the plaintiff's offer, but the letter also referenced the named insureds on the policy and requested that the plaintiff contact the insurance carrier to discuss the release as it pertained to the named insureds. Id. at 902 (2). On appeal, we reversed the trial court's order granting the insurance carrier's motion to enforce the settlement agreement and concluded that the insurance carrier "wanted to negotiate . . . over the inclusion of [the named insureds] in the release." Id. at 905 (2).

Here, Novas sent a letter to Progressive Insurance offering to settle his claims against Bennett and Progressive Insurance for $25,000 in exchange for a limited liability release. In the offer letter, Novas *twice* identified the only two parties against which he wished to settle his claims: Bennett and Progressive Insurance. Specifically,

7

Novas stated in the letter that he desired "to resolve [his] personal injury claim against Ronda Bennett and [Progressive Insurance]," and that in exchange for the policy limit, he would "release all claims [he] ha[d] against Ronda Bennett and [Progressive Insurance]." Progressive Insurance then sent Novas a response letter expressly acknowledging the terms of Novas' offer and his offer to release Bennett and Progressive Insurance. Progressive Insurance did not pose any questions to Novas pertaining to the existing terms in his offer letter or the specific parties he offered to release, nor did it give any indication that it would unequivocally accept Novas' offer. Instead, Progressive Insurance asked Novas whether an additional party that Novas did not previously offer to release could "also be named on the limited liability release[.]"

Viewed in the light most favorable to Novas as the nonmoving party, we conclude that Progressive Insurance's response letter was not an attempt to seek clarification, but it instead constituted a counteroffer under *Yim*. The offer letter was "plain and unambiguous" with respect to the two parties Novas was willing to release. *Yim*, supra, 349 Ga. App. at 907 (2). Progressive Insurance's response letter, however, was not identical with the terms of Novas' offer, nor was it unvarying from the precise terms of Novas' offer. Instead, it questioned whether an additional party could

8

be added to the release which evinces that Progressive Insurance "wanted to negotiate . . . over the inclusion of [John Bennett] in the release," and it therefore constituted a counteroffer. *Yim,* supra, 349 Ga. App. at 905 (2).[2] The fact that Progressive Insurance used the word "clarify" in its response letter is of no significance. As correctly noted by the trial court, "simply putting the word clarify in a response to [the] [p]laintiff does not in and of itself have this effect." The response letter did not pose any questions to Novas regarding Bennett or Progressive Insurance, who were the only parties Novas had offered to release. Thus, it cannot be said that Progressive Insurance was confused and was merely attempting to clarify the terms of Novas' existing offer. This is especially so given that Progressive Insurance later sent Novas a letter purporting to unequivocally accept his offer, which demonstrated its understanding regarding the only two parties Novas had offered to release.

---

[2] Although Bennett attempts to distinguish *Yim* on the grounds that the plaintiff in that case included a release with her offer and stated "in all caps" that only her release would be executed, we find these distinctions to be inconsequential. There is no language in OCGA § 9-11-67.1 (2013) that requires a party to include a release with a settlement offer, nor is there any language in the statute that requires a plaintiff to use any particular words or phrases in satisfying the requirements of a settlement offer. "The General Assembly did not draft the language of the statute in this manner, and we will not construe the statute as if it did." *West v. City of Albany*, 300 Ga. 743, 746 (797 SE2d 809) (2017).

9

We also reject Bennett's claim that Progressive Insurance's request to add John Bennett to the release was reasonable under OCGA § 33-24-41.1 (2019),[3] the statute that governs limited liability releases. There is no language in the statute to indicate that a limited liability release *must* release all insured persons under a policy. The statute simply requires that the *insured tort-feasor* be released from the plaintiff's claims. OCGA § 33-24-41.1 (b) (2) (2019). Notably, we found in *Yim* that the response letter that included references to OCGA § 33-24.41.1 (b) (2) *was further proof* that the insurance carrier sought to negotiate over the persons to be included in the release. See *Yim*, supra, 349 Ga. App. at 907 (2). Hence, Bennett's claim that Progressive Insurance's request was reasonable in light of OCGA § 33-24-41.1 (2019) is unavailing.

---

[3] OCGA § 33-24-41.1 (b) (1) - (2) (2019) states that the limited release shall:

(1) Release the settling carrier from all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants; and

(2) Release the insured tort-feasor covered by the policy of the settling carrier from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims.

We are exceedingly mindful that OCGA § 9-11-67.1 (d) permits a party to request clarification regarding the terms of an offer to settle and that such attempts to seek clarification do not constitute counteroffers. Indeed, this Court has previously identified requests for clarification that did not constitute a counteroffer. See, e.g., *Sherman v. Dickey*, 322 Ga. App. 228, 232-233 (1) (744 SE2d 408) (2013) (rejecting the plaintiff's argument that a binding settlement was not reached because the inclusion of a lien affidavit only sought to confirm the previous assertion made by the plaintiff's attorney). But that is not what occurred in this case. Here, Progressive Insurance did not pose any questions regarding the parties Novas offered to release, but instead requested that an additional party be added to the release.[4] Therefore, given the circumstances of this case, the trial court did not err in its determination that Progressive Insurance's response letter requesting for John Bennett to be included in the release constituted a counteroffer rather than a request for clarification and that no valid contract had therefore been formed between the parties.

(b) We further reject Bennett's argument that, notwithstanding Progressive Insurance's response letter, a binding settlement offer was nevertheless reached between the parties. Specifically, Bennett argues that a binding agreement was still

---

[4] At oral argument, Bennett's counsel admitted that "it's a request."

11

reached because after Progressive Insurance's response letter, the company "accepted" Novas' offer and sent payment to him within the time specified in his offer letter. This argument, however, is meritless.

It is well settled that "a subsequent communication by one party to the alleged contract that varies even one term of the original contract is a counteroffer; a counteroffer rejects an offer and terminates the offeree's power of acceptance." (Citation and punctuation omitted.) *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 687 (2) (534 SE2d 145) (2000). Additionally, because a counteroffer terminates the power of acceptance, "the initial offer was no longer outstanding and could not later be accepted unless renewed." *Duval & Co. v. Malcom*, 233 Ga. 784, 787 (2) (214 SE2d 356) (1975).

Here, as we have determined above, Progressive Insurance's response letter constituted a counteroffer because it sought to add an additional party to the release that was not identified in Novas' offer letter. Because the response letter constituted a counteroffer, the counteroffer terminated Progressive Insurance's ability to accept Novas' offer, and the offer could not be accepted unless Novas renewed the offer. Because Bennett fails to point to anything in the record to show that Novas later

renewed his offer, her argument that a binding settlement agreement was reached between the parties necessarily fails.

Accordingly, for the reasons stated above, we affirm the trial court's order denying Bennett's motion to enforce the settlement agreement.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*