### A00A1103. SURMAN v. BLANSETT.
(539 SE2d 890)

POPE, Presiding Judge.

Wayne Surman appeals from a judgment granting Dale Blansett specific performance of a real estate purchase contract executed by the parties.

The evidence at trial showed that Surman was divorced in November 1996 and, as a part of the divorce settlement, was awarded the family home. By July 1998, however, Surman was unemployed and three to four months behind in his mortgage payments, so he decided to place an advertisement in the paper to sell

---

[14] *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999).

his home. The advertisement noted that Surman had a nonqualifying loan on the property, which could be assumed by the purchaser.

Blansett responded to the advertisement, and the parties met at Surman's house on July 7, 1998. Blansett quickly indicated his interest in buying the house. He had in his briefcase a "Contract to Purchase Realty" form that he had used in prior transactions, and at his urging, both he and Surman signed a contract that afternoon. The purchase contract reflects that Blansett paid Surman $500 in earnest money on the transaction. Surman testified, however, that although Blansett handed him the earnest money check, "somehow or another," while Surman was copying the documents, he ended up with only a copy of the check.

After brief negotiations, the parties had agreed to Surman's asking price of $25,000 cash plus Blansett's assumption of Surman's outstanding loan balance. The outstanding loan balance at that time was approximately $62,441, bringing the total purchase price to $87,441.

Surman had a "non-escalating, non-qualifying," or "NENQ loan," on his house. Blansett testified that a purchaser can assume a NENQ loan without having to qualify separately for his own financing and, therefore, the closing costs on the assumption of such a loan are less than on a traditional loan. In addition, the last of the NENQ loans were made in 1989, thus making them more difficult to find. Blansett is in the mortgage investment business and holds mortgages on enough properties to live off the proceeds. Blansett stated that the relatively rare NENQ loan on Surman's house made the property especially attractive to him because he planned to resell the house in the future.

For the short term, however, Blansett and his wife intended to use the house when they visited their son and grandson, who lived in the area. Surman's house had the added advantage of being a one-story ranch house, which made it easier for Blansett's elderly mother-in-law to get around. It also had a fenced dog kennel, which Blansett intended to use for his son's pet pig.

On or before July 18, 1998, however, Surman telephoned Blansett to say that he would not go through with the deal. The testimony showed conflicting reasons for Surman's change of heart. Blansett testified that Surman told him that he had discovered $7,000 in termite damage that needed to be repaired and that he would have to pay his ex-wife three and one-half percent of the sales proceeds under the terms of their divorce settlement. In addition, he said that he would have to pay off a lien that his ex-wife incurred. With all these expenses, Surman told Blansett that he would not net enough money off the sale and did not wish to close. Surman testified, however, that he changed his mind after he called his mortgage company

and discovered that he would remain secondarily liable on the mortgage even after its transfer to Blansett.

Despite written demands from Blansett's attorney, Surman refused to close on the transaction. Blansett then filed suit for specific performance and attorney fees. Following a bench trial, the trial court ordered specific performance of the parties' contract.

1. Surman asserts that the trial court's order should be reversed because the purchase contract lacked mutuality of obligation. Surman bases his argument on a provision of the purchase contract relating to earnest money. The relevant provision reads:

> In the event Seller is unable to provide marketable title or the mortgage(s) cannot be assumed without qualification or credit check *or if the Buyer's attorney advises, for any reason, that the closing should not take place,* the earnest money shall be returned to Buyer as full liquidated damages and both Buyer and Seller shall be released from any and all liabilities.

(Emphasis supplied.) This language provides that the earnest money shall be returned to Blansett and neither party shall be bound if one of three contingencies occurs: (1) if Surman is unable to provide marketable title to the property; (2) if the mortgage cannot be assumed without the necessity of Blansett qualifying or without a credit check; or (3) if for any reason, Blansett's attorney advises him not to close. Surman's argument addresses only the third contingency. He asserts that because the language of this provision gives Blansett's attorney complete discretion to call off the deal, the purchase contract lacks mutuality.

But a contract does not fail for lack of mutuality "where the satisfaction of a *third person* is made a condition precedent to the payment of the purchase price. [Cits.]" (Emphasis in original.) *Nalley v. Harris*, 176 Ga. App. 553, 555 (1) (336 SE2d 822) (1985) (real estate contract did not lack mutuality where it provided that repairs must be done to satisfaction of the inspector or the purchaser). "This is true even though the third person is employed or selected by the party contesting performance. [Cit.]" Id. But see *Jakel v. Fountainhead Dev. Corp.*, 243 Ga. App. 844, 846 (534 SE2d 199) (2000) (option agreement lacked mutuality of obligation where it gave *seller* complete discretion to refuse offer to buy).

Moreover, our Supreme Court has held that the payment of earnest money in exchange for the owner's promise to sell provides sufficient consideration for a real estate purchase contract. *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980). The court noted that "where there is any . . . consideration for a contract [other than

mutual promises] so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential. [Cit.]" (Punctuation and emphasis omitted.) Id. Here, the purchase contract stated that Blansett paid Surman $500 in earnest money, and both parties agree that he tendered the check to Surman, though it may have later been misplaced in the shuffle of papers. Under the authority of *Brack v. Brownlee*, therefore, mutuality of obligation was not required in this instance. Cf. *Potter v. Hicks*, 260 Ga. 146 (2) (390 SE2d 850) (1990).

2. Surman also asserts that Blansett was not entitled to specific performance because he failed to prove that the sale price under the purchase contract represented the fair market value and thus failed to establish that the contract was fair, just, and equitable.

"[S]pecific performance is not a matter of absolute right." *Kelly v. Vargo*, 261 Ga. 422, 423 (2) (405 SE2d 36) (1991). To succeed in a claim for specific performance, the purchaser "must prove the value of the property so as to enable the court to determine that the contract was fair, just and not against good conscience. [Cits.]" *Moody v. Mendenhall*, 238 Ga. 689, 693 (6) (234 SE2d 905) (1977). And "whether the price was adequate and whether enforcement of the contract was equitable" are questions for the trier of fact. *English v. Muller*, 270 Ga. 876, 877 (2) (514 SE2d 194) (1999).

Here, the evidence showed that Blansett paid Surman the asking price for the property. Surman arrived at the price after talking to "real estate people." And Blansett, who testified that he was experienced in purchasing property in the area, stated that in his opinion the purchase price was "about right" for the property. Opinion evidence as to the value of property can have probative value when it is based upon a foundation that the witness "has some knowledge, experience or familiarity with the value of the property in question or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. . . ." (Citations and punctuation omitted.) *Bradford v. City of Albany*, 242 Ga. App. 477, 478 (529 SE2d 906) (2000).

Accordingly, we find that the evidence was sufficient to support the trial court's conclusions that Blansett was competent to testify as to value, that at the time the contract was executed the fair market value of the property was "approximately the same as" the purchase price in the contract, and thus that the contract was fair, just, and not against good conscience.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED SEPTEMBER 28, 2000.

*Delong & Caldwell, Earnest H. Delong, Jr.*, for appellant.
*Bussart & Litt, James C. Bussart*, for appellee.