## A02A0580. OWENBY v. HOLLEY et al.
### (567 SE2d 351)

MIKELL, Judge.

In this action for specific performance, we reverse the grant of summary judgment to the defendants-appellees and affirm the denial of the plaintiff-appellant's motion, holding that genuine issues of material fact remain for trial. The relevant facts follow.

In 1982, George L. Owenby executed a warranty deed conveying property to his sister, Lucy O. Mayfield, in exchange for $25,000. In the deed, Owenby reserved "an option to re-purchase property for $25,000.00 if grantee or her heirs decide to resale [sic] the property." In connection with the sale, Mayfield executed a promissory note in the amount of $22,000. The note contains a clause stating: "Should I or my heirs sale [sic] said property, George L. Owenby shall have first potion [sic] to purchase said property for $25,000.00." Contemporaneously with the transaction, Owenby and Mayfield executed the following document ("the agreement"):

> As part of the consideration and the parties['] mutual promises and agreement, party of the first part binds herself; her heirs and assigns to execute to said party of the second part his heirs and assigns a good and sufficient Warranty Deed upon the death of party of first part for the sum of $25,000.00 or for whatever principal amount has been paid to the party of the second part.

The agreement is signed under seal by Mayfield as party of the first part and Owenby as party of the second part.

Mayfield resided on the property until her death in November 1998. Shortly before she died, Mayfield executed a quitclaim deed transferring the property to the Lucy Owenby Mayfield Separate Property Trust ("Trust"). In July 1999, the trustee, Dorothy Holley, who is Mayfield's daughter and executrix of her estate, conveyed the property via a quitclaim deed to herself and her sister, Lucy Ann Smith.

Owenby claimed he was entitled to purchase the property upon

Mayfield's death. When her heirs disagreed, Owenby filed suit,[1] seeking specific performance of the agreement, cancellation of the quitclaim deeds, and attorney fees. Owenby moved for summary judgment, attaching the affidavit of attorney J. W. Morgan, who averred that Mayfield contacted him in 1982 to conduct the sale of the property; that he prepared the documents for the transaction, which included a warranty deed, security deed, promissory note, and resale agreement; and that

> [t]here was no question at that time as to the intention of the parties, specifically that Mrs. Lucy O. Mayfield, wished to have and Mr. George L. Owenby, wished her to have what I believe to be, the old home place . . . during her life or until she was ready to dispose of same. That she was to pay him the sum of $25,000.00 as setforth [sic] in the deed executed that date, and that if she were to dispose of the property or die the property was to revert to Mr. George L. Owenby for the repayment of the sum of $25,000 she had paid, all of which is clearly setforth [sic] in the four instruments. . . .

In response to Owenby's motion, the Mayfield heirs contended that a question of fact remained as to the intent of the signatories because the agreement was vague, ambiguous, and inconsistent with the note and warranty deed. In this regard, the Mayfield heirs argued that the agreement granted Mayfield a life estate, while the note and warranty deed granted Owenby an option to purchase the property. Next, the Mayfield heirs argued that the triggering terms in the deed and note had not been satisfied because the heirs had not decided to sell the property. Finally, the Mayfield heirs contended that specific performance was not a viable remedy because the agreement lacked a valid consideration.

In support of the Mayfield heirs' position, Holley submitted an affidavit, in which she averred that Mayfield informed her that the property would pass to Holley and Smith upon Mayfield's death, and that Owenby could exercise his option to repurchase the property after Mayfield's death only if her heirs decided to sell it. Mayfield and Owenby's sister, Dorothy Owenby Harden, similarly averred that Mayfield expressed the hope that her heirs would not sell the property and that she knew that event would trigger Owenby's right to purchase it. The Mayfield heirs also supplied the affidavit of a certi-

---

[1] Owenby named as defendants Holley, in her individual capacity and as trustee and executrix; Smith; the Trust; Mayfield's estate; Fred Mayfield III; and Mickey Jiffo ("Mayfield heirs").

fied real estate appraiser, Eddie Phillips, who opined that the fair market value of the property at the time of Mayfield's death was between $48,500 and $52,500.

After a hearing on the motion for summary judgment, the trial court denied Owenby's motion and, sua sponte, granted summary judgment to the Mayfield heirs. The court ruled as follows: the option contained in the note and warranty deed violated the rule against perpetuities; the agreement was a valid contract; and the agreement was void because it granted to Mayfield a life estate, while the note and deed conveyed to her fee simple title absolute. Owenby appeals these rulings.

1. The trial court erred in holding that Owenby's option to purchase the property, as stated in the note and warranty deed, violated the rule against perpetuities. The rule in effect until 1990 provided: "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. . . ."[2]

Pursuant to this rule,

An owner of realty may legally sell it to another and at the same time reserve the right to repurchase the land within a specified time. However, an option to purchase realty or an interest therein which is unlimited as to the time within which the option may be exercised constitutes a perpetuity and is prohibited under the statute.[3]

In the instant case, it is clear from the note and deed that the right to repurchase is reserved solely to "George L. Owenby." As the option is personal to Owenby, it must be exercised in his lifetime. Thus, it does not violate the rule against perpetuities.[4]

However, the Mayfield heirs are correct that the event which would trigger Owenby's right to repurchase the property under the note and deed has not occurred, as there is no evidence of a decision to sell the property. It cannot reasonably be argued that the conveyance of the property to the Trust constituted a sale. A document cap-

---

[2] OCGA § 44-6-1 (a), repealed by Ga. L. 1990, p. 1837, § 1. In 1990 Georgia adopted the Uniform Statutory Rule Against Perpetuities, OCGA §§ 44-6-200 to 44-6-206. OCGA § 44-6-201 (a) (1) provides in pertinent part: "A nonvested property interest is invalid unless: (1) When the interest is created, it is certain either to vest or to terminate within the lifetime of an individual then alive or within 21 years after the death of that individual." For a discussion of the rule's legislative history in Georgia from 1863 to the present, see Chaffin, Georgia's Proposed Dynasty Trust: Giving the Dead Too Much Control, 35 Ga. L. Rev. 1, 10-14 (2000).

[3] (Citations, punctuation and emphasis omitted.) Floyd v. Hoover, 141 Ga. App. 588, 592 (2) (234 SE2d 89) (1977).

[4] Williams v. Cowan, 226 Ga. 319, 320 (174 SE2d 789) (1970).

tioned "Assignment of Real Estate to Revocable Living Trust" recites that "Lucy Owenby Mayfield, does hereby transfer and assign, without consideration and in order to change formal title only, all right, title and interest in the [property] to Lucy Owenby Mayfield, Trustee. . . ." Nor is there any evidence that the Mayfield heirs have decided to sell the property. Accordingly, the disposition of this appeal turns on the validity and interpretation of the agreement.

2. Several considerations guide our interpretation of the agreement at issue. First, a contract for the sale of an interest in real property must satisfy the statute of frauds, and "writings relied on to take the transaction out of the [s]tatute of [f]rauds must (a) identify the buyer and seller, (b) describe the subject matter of the contract, and (c) name the consideration."[5] In the instant case, while the agreement identifies the parties and names the consideration, it does not contain a description of the property. Normally, this defect would be fatal to its validity, because "[t]o satisfy the statute of frauds, a contract for the sale of land must describe the property to be sold with the same degree of certainty as that required in a deed conveying realty."[6] Here, however, we do not examine the agreement in a vacuum, as Owenby presented some evidence that it was executed at the same time as the note and warranty deed. OCGA § 24-6-3 (a) provides that "[a]ll contemporaneous writings shall be admissible to explain each other." The note, warranty deed, and agreement are all dated May 29, 1982. Therefore, the note and deed may be considered to establish the missing property description in the agreement.[7]

Whether the agreement may be specifically enforced, however, depends on the intent of the signatories. "It would be inequitable to carry a contract into effect where the court is left to ascertain the intention of the parties by mere guess or conjecture, because it might be guilty of erroneously decreeing what the parties never intended or contemplated."[8] In the instant case, considering the agreement in light of the note and warranty deed, there is conflicting evidence of the signatories' intent. The agreement purports to convey to Mayfield a life estate, while the note and deed grant her fee simple title, reserving to Owenby an option to purchase. "The cardinal rule of construction, both at common law and under our code, is[ ] that instruments containing conditions, limitations, and restrictions are to be construed in each case in such way as to carry into effect the intent of

---

[5] (Citation and punctuation omitted.) *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 236 (267 SE2d 816) (1980).

[6] (Punctuation and footnote omitted.) *Bulloch South, Inc. v. Gosai*, 250 Ga. App. 170, 172 (1) (550 SE2d 750) (2001); see also OCGA § 13-5-30 (4).

[7] See, e.g., *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1) (314 SE2d 874) (1984).

[8] (Citations and punctuation omitted.) *Wiley v. Tom Howell & Assoc.*, supra, 154 Ga. App. at 236.

the parties as gathered from the instrument as a whole."[9] The inconsistency between the agreement and the remaining instruments creates an ambiguity which can only be resolved by the trier of fact, aided by parol evidence.[10]

3. Finally, the Mayfield heirs assert that Owenby was not entitled to specific performance of the agreement because he failed to prove that the price was equitable.[11]

> To succeed in a claim for specific performance, the purchaser must prove the value of the property so as to enable the court to determine that the contract was fair, just and not against good conscience. And whether the price was adequate and whether enforcement of the contract was equitable are questions for the trier of fact.[12]

The trial court made no ruling on this issue, but we hold that a question of fact remains thereon. Moreover, *Hancock v. Hancock*,[13] cited by Owenby in support of his argument that he was entitled to summary judgment on this issue, is distinguishable. That case held that "the court will not inquire into the adequacy or inadequacy of the consideration" under OCGA § 23-2-133, formerly Code Ann. § 37-805, where a family settlement is involved.[14] Owenby, however, has not established that the agreement was effected to settle a family dispute. Accordingly, he is not seeking to enforce a family settlement, and *Hancock* is inapposite.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 19, 2002.

*Ballard, Stephenson & Waters, W. D. Ballard, Eugene D. Butt*, for appellant.

*Bryan M. Pulliam*, for appellees.

---

[9] *Wadley Lumber Co. v. Lott*, 130 Ga. 135, 137-138 (60 SE 836) (1908).

[10] Cf. *Bulloch South, Inc. v. Gosai*, supra, 250 Ga. App. at 174 (1) (a).

[11] OCGA § 23-2-133.

[12] (Citations and punctuation omitted.) *Surman v. Blansett*, 246 Ga. App. 183, 186 (2) (539 SE2d 890) (2000).

[13] 223 Ga. 481, 487 (3) (b) (156 SE2d 354) (1967).

[14] (Citations and punctuation omitted.) Id.; see also *Mitchell v. Mitchell*, 191 Ga. App. 139, 140 (1) (381 SE2d 84) (1989).