## A08A0377. WEEKS v. ROWELL et al.
(657 SE2d 881)

ANDREWS, Presiding Judge.

John Rowell, Jr. and Roger Rowell filed a petition in November 2004, seeking an order requiring Jean Weeks to specifically perform a November 1992 contract for the sale of land. The Bibb County Superior Court granted summary judgment compelling specific performance, and Weeks appeals. For the following reasons, we reverse.

The November 6, 1992 sales contract between the Rowells and Weeks provided for Weeks to sell the Rowells 100 acres of land in Laurens County for $45,000 upon delivery at closing of a warranty deed conveying fee simple title to the property. The sales contract contained no specific time requirement for closing, but provided only that the closing would occur "[a]s soon as Seller is able to obtain clear deed & title." The sales contract stated that Weeks acknowledged receipt of a check for $3,000 from the Rowells as earnest money to be applied to the purchase price at closing. Special stipulations to the sales contract stated that the closing would occur "as soon as purchaser is able to obtain clear deed and title" and that, from the date of the sales contract until the closing date, the purchasers shall rent the property at issue and "$3,000.00 already paid to Seller will cover this rental period." The special stipulations further provided that "Buyers have paid $3,000.00 to Jean Weeks" and that "[o]n date of closing, Purchasers will pay Jean Weeks full purchase price of $45,000.00 at which time the $3,000.00 earnest money will be refunded to the Purchasers."

John Rowell testified by deposition that, in conjunction with the sales contract for purchase of the land, he and his brother, Roger Rowell, also purchased a mobile home located on the land and other personal property from Weeks for the sum of $2,500. According to John Rowell, the $2,500 paid to Weeks by check for the mobile home, plus another $500 deposit on the land paid by check to Weeks, covered both the $3,000 earnest money under the sales contract and the rent for the subject property.[1] Deposition testimony given by John and Roger Rowell and an affidavit given by John Rowell show that they were aware prior to entering into the November 1992 sales contract that, because of a pending suit filed against Weeks challenging her title to the subject property, Weeks did not have clear title, and that nobody knew how long it would take for Weeks to get clear title. John Rowell testified that Weeks stopped by from time to time after 1992

---

[1] Weeks filed a counterclaim in this action alleging that the Rowells owed her for rent due on the subject property, and for the value of personal property and the mobile home taken from the subject property. These claims, which remain pending in the trial court, are not at issue in this appeal.

to inform them that she was working on getting a clear title, and that he knew "this thing just kind of had to go on hold."

Weeks testified by deposition that she signed the November 6, 1992 sales contract, and that she knew the closing would not take place until the suit challenging her title was resolved. Weeks understood that the $45,000 sales price for the land included the mobile home located on the land, and she testified that she was paid $3,000 by the Rowells at the time of the sales contract. While acknowledging payment of the $3,000 by the Rowells, Weeks claimed that the payment was solely for the mobile home and had nothing to do with the sales contract for the land. After her deposition testimony, Weeks submitted two affidavits, one filed before summary judgment was granted and one filed after summary judgment, which contradicted her deposition testimony that she was paid $3,000 by the Rowells. In the affidavits, Weeks stated for the first time that she never received the $3,000 payment because the Rowells stopped payment on the checks they gave her for that amount.

Because the sales contract did not specify a closing date other than the date that Weeks was able to obtain clear title, performance under the contract was required to be completed within a reasonable time. *Ferguson v. Bank of Dawson*, 57 Ga. App. 639, 640 (196 SE 195) (1938); OCGA § 13-4-20. The parties entered into the sales contract aware that Weeks was involved in litigation over title to the property and aware that the closing could not occur until, as a condition precedent, Weeks obtained clear title. It is undisputed that in June or July 2004, about 12 years after the sales contract was signed, Weeks told the Rowells that she had obtained clear title to the subject property. Nevertheless, Weeks refused to close on the sales contract for the $45,000 sales price set forth in the contract because she had concluded this was not a fair price. Although Weeks did not explain why it took so long to resolve the litigation or for her to obtain clear title, there is no evidence that the Rowells took any action that delayed resolution of the title issue.

Evidence showed that, at the time of the November 1992 sales contract, the Rowells were aware, but Weeks was not, of an October 1992 appraisal of the subject property showing that it had a fair market value at that time of $57,500. The appraisal, however, was based on the assumption that the subject property consisted of 85 acres, with only "a good possibility that there is a total of 100 acres." Weeks testified that the local tax assessor had changed its records to reflect that the subject property consisted of 100 acres instead of 85 acres. Although Weeks claimed in her deposition that she had an appraisal of the subject property showing that it had a present fair market value of $200,000, she did not produce the appraisal or any

other evidence as to the present fair market value of the property.[2] Other evidence showed that, although Weeks did not hold title to the subject real property when she signed the sales contract, she obtained fee simple title to the property before the Rowells filed the action for specific performance. Because Weeks would not close for the $45,000 price set forth in the November 1992 sales contract, the Rowells sued for specific performance in November 2004, to compel a closing pursuant to the terms in the sales contract.

On this record, we find that the trial court erred by granting summary judgment in favor of the Rowells on the issue of specific performance of the sales contract.

> Specific performance is not a matter of absolute right. To succeed in a claim for specific performance, the purchaser must prove the value of the property so as to enable the court to determine that the contract was fair, just and not against good conscience. And whether the price was adequate and whether enforcement of the contract was equitable are questions for the trier of fact.

(Citations and punctuation omitted.) *Surman v. Blansett*, 246 Ga. App. 183, 186 (539 SE2d 890) (2000). The record shows that, when the parties signed the sales contract, the subject property was valued at $57,500 on the basis of an appraisal that assumed it was composed of 85 acres. There was evidence that the property was actually composed of 100 acres, as set forth in the sales contract. On these facts, whether the $45,000 sales price in the sales contract was adequate in relation to the fair market value of the property, and whether enforcement of the contract was equitable, are disputed questions of fact. Id. Accordingly, the grant of summary judgment pursuant to OCGA § 9-11-56 was inappropriate. See generally *Beaulieu of America v. L. T. Dennard & Co.*, 253 Ga. 21 (315 SE2d 889) (1984).

Contrary to Weeks's claim, the sales contract was not unenforceable because she did not have title to the subject property when she signed the contract. *Horn v. Wright*, 157 Ga. App. 408, 409 (278 SE2d 66) (1981). It is undisputed that Weeks obtained title to the property prior to the suit for specific performance. A seller may "contract to sell property not owned by himself, taking his chances on obtaining title prior to the date of consummation of the sale or responding in damages if he fails to do so." (Citation and punctuation omitted.) Id.

---

[2] In any event, "[t]he fairness of a contract is usually to be determined as of its date, and the happening of subsequent events within the reasonable contemplation of the parties does not afford a defense." *Whitehead v. Dillard*, 178 Ga. 714, 717 (174 SE 244) (1934).

There is no merit to Weeks's claim that the record demands the conclusion that the sales contract was unenforceable for failure of consideration. In support of this claim, Weeks contends that there was no consideration to support the sales contract because the Rowells failed to pay her the earnest money due under the contract. Pretermitting whether mutually binding promises by the Rowells and Weeks provided consideration independent of the payment of earnest money, the record did not require the trial court to find, as a matter of law, that no earnest money was paid to Weeks. See *Brack v. Brownlee*, 246 Ga. 818 (273 SE2d 390) (1980). Finally, we find no basis for Weeks's contention that the sales contract was too indefinite to be specifically enforced. The contract was sufficiently definite to be performed and therefore not so indefinite as to be unenforceable. *Golden v. Frazier*, 244 Ga. 685, 687 (261 SE2d 703) (1979).

*Judgment reversed. Ruffin and Bernes, JJ., concur.*

DECIDED FEBRUARY 5, 2008.

*Chuck Sylvester*, for appellant.

*Bush, Crowley, Leverett & Leggett, J. Wayne Crowley*, for appellees.